**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | | |
|---|---|---|---|
| Grand Juror Doe, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | No. | 4:15-cv-00006-RWS |
| | ) | | |
| Robert P. McCulloch, in his official capacity | ) | | |
| as Prosecuting Attorney for St. Louis | ) | | |
| County, Missouri, | ) | | |
| | ) | | |
| Defendant. | ) | | |

**MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS**

**I.      Background.**

Grand Juror Doe ("Doe" or "Plaintiff") challenges "Mo. Rev. Stat. §§ 540.080, 540.120,

540.310, and 540.320, as well as any other provision of Missouri law that prohibits Plaintiff from

discussing or expressing an opinion about Plaintiff's grand jury service, the witnesses and

evidence, the State's counsel to the grand jury, and Defendant's characterizations of the grand

juror's views[.]" Doc. # 1, at ¶ 50. Doe asserts that, as applied in the circumstances of this case,

any interests that might justify the permanent prohibition on his public and private expression are

outweighed by the protection guaranteed to speech by the express words of the Constitution.[1]

McCulloch urges this Court to avoid considering the merits of Doe's First Amendment

challenge. McCulloch argues Doe lacks standing and advances claims that are not ripe, barred by

the Eleventh Amendment, and upon which relief is unavailable. McCulloch also encourages this

---

[1]      For the purposes of convenience and to avoid confusion, Defendant adopted the
convention of referring to Plaintiff with male pronouns. For the sake of consistency, Plaintiff will
do the same.

1

Court to abstain from considering Doe's federal constitutional rights in the interests of federalism. Doe opposes McCulloch's request.

**II.      Legal Standard.**

McCulloch's request to dismiss for lack of subjectmatter jurisdiction is governed by Federal Rule of Civil Procedure 12(b)(1). The factual allegations regarding jurisdiction are presumed to be true and the motion may succeed only if the plaintiff failed to allege an element necessary for subject matter jurisdiction. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). "Dismissal for lack of subject matter jurisdiction will not be granted lightly." *Wheeler v. St. Louis Sw. Ry. Co.*, 90 F.3d 327, 329 (8th Cir. 1996).

McCulloch's call for dismissal for failure to state a claim is pursuant to Rule 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), this Court must accept as true all factual allegations in the complaint and view them in a light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The sole purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. An action fails to state a claim upon which relief can be granted only if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To survive a motion to dismiss, a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 555.

**III.     Argument.**

A.  Doe has alleged sufficient facts to establish standing.

McCulloch argues Doe lacks standing to bring this claim.

"Article III of the Constitution limits the 'judicial power' of the United States to the resolution of 'cases' and 'controversies.'" *Valley Forge Christian Coll. v. Ams. United for*

*Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982). The doctrines of standing and ripeness are employed to determine if a case if justiciable. *Gray v. City of Valley Park, Mo.*, 567 F.3d 976, 983 (8th Cir. 2009) (quoting *Schanou v. Lancaster Cnty. Sch. Dist. No. 160*, 62 F.3d 1040, 1042 (8th Cir.1995)). "Although … standing and ripeness are technically different doctrines, they are closely related in that each focuses on 'whether the harm asserted has matured sufficiently to warrant judicial intervention.'" *Johnson v. State of Mo.*, 142 F.3d 1087, 1090 n.4 (8th Cir. 1998) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 n. 10 (1975)).

       1.   Doe has standing.

The standard standing inquiry demonstrates that Doe has standing. A plaintiff establishes Article III standing by showing: (1) he has "suffered an injury in fact;" (2) the injury is "fairly traceable to the challenged action of the defendant;" and, (3) it is likely that the injury "will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations and internal quotation marks omitted).

Doe challenges Missouri laws requiring him to remain forever silent about his grand jury service, the witnesses and evidence, the State's counsel to the grand jury, and McCulloch's characterizations of Doe's views. The Article III standing doctrine "requires federal courts to satisfy themselves that the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (internal quotations and emphasis omitted). In other words, the plaintiff must allege facts demonstrating he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers. *Warth*, 422 U.S. at 518. Doe satisfies this standard and, thus, has Article III standing to bring this claim.

a. Doe is suffering an injury-in-fact.

A plaintiff may establish a sufficient injury-in-fact with an allegation of "an intention to engage in a course of conduct arguably affected with a constitutional interest." *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2343 (2014) (quotation marks and citation omitted). A plaintiff may also "establish injury in fact for a First Amendment challenge to a state statute [by showing only] that he would like to engage in arguably protected speech, but that he is chilled from doing so by the existence of the statute." *281 Care Comm. v. Arneson*, 766 F.3d 774, 780-81 (8th Cir. 2014) (quotation and citation omitted). "Self-censorship can itself constitute injury in fact." *Id.*

Doe's self-censorship is reasonable. While "[t]otal lack of enforcement of a statute can itself undermine the reasonableness of chill allegedly resulting from that statute … only in extreme cases approaching desuetude." *281 Care Comm. v. Arneson*, 638 F.3d 621, 628 (8th Cir. 2011). Indeed, "[t]he Supreme Court has repeatedly found that plaintiffs have standing to bring pre-enforcement First Amendment challenges to criminal statutes, even when those statutes have never been enforced." *Id.* (citations omitted). To avoid suit, a defendant must show a policy or custom demonstrating "that authorities actually reject a statute" to "undermine[] its chilling effect." *Id.* Here, there is no pretense that the challenged statutes will not be enforced or that the challenged statutes have actually been rejected. Indeed, by handing the grand jurors copies of the grand jury secrecy laws at the conclusion of the grand jurors' service, defendant embraced rather than rejected the statutes. *See* Doc. # 1, at ¶ 28; Doc. # 1, Ex. A.

b. Doe's injury is fairly traceable to McCulloch.

Doe's injury is fairly traceable to McCulloch because, as prosecuting attorney, McCulloch "shall commence and prosecute all civil and criminal actions in the prosecuting attorney's county in which the county or state is concerned[.]" Mo. Rev. Stat. § 56.060.1. It is

4

precisely Doe's reasonable fear of an action by the county or state to enforce the challenged statutes that causes the chilling effect on Doe. McCulloch, in his official capacity, would commence and prosecute any action against Doe should Doe run afoul of the challenged laws.

McCulloch contends he has no role in the enforcement of some of the statutes Doe challenges. While McCulloch concedes he has discretion to prosecute Doe for any violation of Missouri Revised Statutes § 540.320, McCulloch suggests his role as prosecutor is limited to prosecuting misdemeanor offenses.

McCulloch's power is not as modest as he suggests.

Sections 540.080 and 540.310 are not unenforceable simply because those statutes do not provide a specific penalty for violation. Rules governing grand jury proceedings have long been enforced through criminal contempt actions. *See e.g.*, *Ex parte Creasy*, 148 S.W. 914, 916 (Mo. 1912). A criminal contempt proceeding is criminal in nature, *Ex parte Shull*, 121 S.W. 10, 11 (Mo. 1909), because "[c]riminal contempt is punitive in nature[.]" *State ex rel. Chassaing v. Mummert*, 887 S.W.2d 573, 578 (Mo. banc 1994).[2] While "criminal contempt is not, strictly speaking, a criminal proceeding, but rather is *sui generis*," criminal contempt has many attributes of a traditional criminal proceeding, including prosecution by the State, the State having the burden of proving its case beyond a reasonable doubt, and many of the protections afforded a criminal defendant. *Ramsey v. Grayland*, 567 S.W.2d 682, 686 (Mo. App. 1978); *see also Chassaing*, 887 S.W.2d at 579-80.

---

[2]      "In Missouri, '[p]unishment for contempt may be by fine or imprisonment ... in the discretion of the court.'" *Smith v. Pace*, 313 S.W.3d 124, 131 n.10 (Mo. banc 2010) (quoting § 476.120). Moreover, "[a]lthough the legislature has chosen to specify five acts as contemptuous, … [t]he courts' inherent powers are neither expanded nor infringed upon by the statutory contempt power." *Id.* at 130 n.8.

McCulloch, as the prosecuting attorney for St. Louis County, is responsible for commencing and prosecuting any contempt proceeding. Section 56.060.1 provides: "[e]ach prosecuting attorney shall commence and prosecute all civil and criminal actions in the prosecuting attorney's county in which the county or state is concerned[.]" The St. Louis County Charter provides: "[t]he prosecuting attorney shall possess and exercise all the powers and duties now or hereafter given to that office by the constitution, by law[,] and ordinance." St. Louis Cnty. Charter § 5.060.[3] McCulloch does not dispute that criminal contempt proceedings against a former grand juror are matters that concern the county, the state, or both. Thus, as with the statutes that specify misdemeanor penalties, McCulloch is also charged with prosecuting violations of Sections 540.080 and 540.310.

McCulloch argues Doe lacks standing because it is unreasonable for Doe to fear prosecution, as alleged in paragraph 40 of the Complaint, because McCulloch "has already released the evidence and testimony given before the grand jury[.]" Doc. # 28, at p. 7. McCulloch, however, has only "publicly released *some* evidence presented to the grand jury, including transcripts, reports, interviews, and forensic evidence" and "although the release of a large number of records provides an appearance of transparency, with heavy redactions and the absence of context, those records do not fully portray the proceedings before the grand jury." Doc. # 1, at ¶¶ 30, 33 (emphasis added). *See, Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting

---

[3]     A certified copy of the St. Louis County Charter is attached. This Court should take judicial notice of the Charter. *See, Sastry v. City of Crestwood*, No. 4:10CV215CDP, 2011 WL 2938163, at *10 n.8 (E.D. Mo. July 19, 2011) (taking judicial notice of ordinances); *Caldwell v. McGahan*, 894 S.W.2d 237, 240 (Mo. Ct. App. 1995) (noting that court may take judicial notice of ordinance made part of record).

that "for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true").

Setting aside any disagreement about what McCulloch has, or has not, publicly disclosed, McCulloch's standing argument is based on the inaccurate premise that Doe does not wish to do anything more than release information McCulloch already elected to release. In fact, Doe alleged:

> [He] would like to speak about the experience of being a grand juror, including expressing [his] opinions about the evidence and the investigation, and believes [his] experience could contribute to the current public dialogue concerning race relations. In [his] view, the current information available about the grand jurors' views is not entirely accurate—especially the implication that all grand jurors believed that there was no support for any charges. Moreover, the public characterization of the grand jurors' view of witnesses and evidence does not accord with [his] own. [He] also wishes to express opinions about: whether the release of records has truly provided transparency; [his] impression that evidence was presented differently than in other cases, with the insinuation that Brown, not Wilson, was the wrongdoer; and questions about whether the grand jury was clearly counseled on the law.

Doc. # 1, at ¶ 34. Furthermore, Doe alleged McCulloch's public statements characterized the collective views of the grand jury about the evidence, witnesses, and law in a manner that did not comport with Doe's own views. *Id.* at ¶ 32. By these allegations, Doe articulated the content of the expression from which he is refraining (to the degree possible while remaining cognizant of the existence of the laws he is challenging). Thus, Doe alleged he is chilled from engaging in expression that goes far beyond merely repeating what McCulloch has already said publicly.

McCulloch's concession that McCulloch himself might not prosecute Doe for repeating McCulloch's speech offers no comfort to Doe.[4] McCulloch's insistence that all that is at stake in

---

[4]     Notably, McCulloch does not disavow prosecuting Doe if Doe does disclose evidence given before the grand jury or the name of a witness, even if it is the same information

this case is a desire by Doe to parrot what McCulloch says demonstrates the reasonableness of the chilling effect on Doe.

Even so, allowing Doe to speak, but requiring Doe to memorize and adhere to every redaction or omission made by McCulloch would trap Doe in an untenable situation. For example, according to the redacted transcripts that McCulloch elected to release, which are attached to and incorporated into Doe's Complaint, the Police Chief of the City of Ferguson, the first supervisor to encounter Darren Wilson after Wilson killed Michael Brown, the eyewitness accompanying Brown when he was killed, and another purported eyewitness each testified. McCulloch has revealed the name of Dorian Johnson, the individual who was with Brown when Wilson killed Brown—but McCulloch has redacted the names of the Police Chief of Ferguson, the first supervisor on the scene, and the other purported eyewitness. It has been widely reported that Tom Jackson is the Police Chief of Ferguson, the first police supervisor on the scene was William Mudd, and the purported eyewitness was Sandra McElroy. Under McCulloch's theory of the case, Doe *can* say the "Ferguson Police Chief" testified (because McCulloch chose to make the title of the witness public), but Doe *cannot* say "Tom Jackson" testified because McCulloch chose to redact that information. Doe could say that "Dorian Johnson" testified because McCulloch did not redact Mr. Johnson's name, but could not refer to Mr. Mudd and Ms. McElroy by name because of McCulloch's redactions.[5]

The copious tranches of documents are replete with such arbitrary redactions on points far more obscure than witness names. This situation is analogous to a challenge to a statute that

---

McCulloch disclosed. Moreover, because the ban on Doe's expression is forever, this suit is against McCulloch in his official capacity and McCulloch's successor might view things differently.

[5]     The version of each of these witnesses' testimony that McCulloch publicly released is part of Exhibit C to the Complaint. They are attached hereto for the Court's convenience.

proscribes some category of false speech. There, the Supreme Court has held that "the likelihood of inadvertently or negligently making false statements is sufficient to establish a reasonable fear of prosecution under the statute." *281 Care Comm. v. Arneson*, 638 F.3d 621, 629 (8th Cir. 2011) (citing *Babbitt*, 442 U.S. at 301-02). That is, "[a] First Amendment plaintiff does not always need to allege a subjective intent to violate a law in order to establish a reasonable fear of prosecution." *Id.* Here, it is reasonable for Doe to fear prosecution for speaking about witnesses and evidence McCulloch has released because of the likelihood of inadvertently or negligently disclosing information McCulloch has not disclosed.

> c.   Doe's injury would likely be redressed by a favorable decision.

The final part of *Lujan*—the redressability requirement—is satisfied because "'a favorable decision will relieve a discrete injury to [Plaintiff].'" *281 Care Comm.*, 638 F.3d at 631 (quoting *Minn. Citizens Concerned for Life v. FEC*, 113 F.3d 129, 131 (8th Cir. 1997). McCulloch is responsible for enforcing the challenged laws. Even McCulloch concedes he is responsible for enforcing the misdemeanor provisions. Granting declaratory or injunctive relief against McCulloch would prevent the St. Louis County Prosecuting Attorney from commencing or prosecuting a misdemeanor or criminal contempt proceeding against Doe and, thereby, relieve Doe of the threat of prosecution and redresses Doe's injury.

> 2.   Doe's claim is ripe.

Doe's claim is ripe for adjudication because Doe has modified his behavior to avoid engaging in expressive activity he contends is protected by the First Amendment.

The doctrine of ripeness is a judicially created one that "flows from both the Article III 'cases' and 'controversies' limitations and also from prudential considerations for refusing to exercise jurisdiction." *Neb. Pub. Power Dist. v. MidAm. Energy Co.*, 234 F.3d 1032, 1037 (8th

Cir. 2000) (citing *Reno v. Catholic Soc. Servs., Inc.,* 509 U.S. 43, 57 n.18 (1993)). "[R]ipeness is peculiarly a question of timing[.]" *Blanchette v. Connecticut Gen. Ins. Corporations*, 419 U.S. 102, 140 (1974).

The Eighth Circuit has observed that "[w]hile elegant-sounding in theory, judicial ripeness often proves something of a cantaloupe." *Neb. Pub. Power Dist. v. MidAm. Energy Co.*, 234 F.3d 1032, 1038 (8th Cir. 2000). "'The difference between an abstract question and a case or controversy is one of degree, of course, and is not discernible by any precise test.'" *Id.* (quoting *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 297 (1979)).

Here, there is nothing abstract or speculative about the harm to Doe. Doe described the expressive activity in which he would like to engage and why. Doc. # 1, at ¶¶ 19-22, 32-37, 38. Doe alleges he is chilled from engaging in expressive activity because of the laws he challenges. *Id.* at ¶¶ 40-41. Doe's "alleged injury is not based on speculation about a particular future prosecution[; r]ather, the injury is speech that has already been chilled and speech that will be chilled … because of the very existence of [the challenged laws]." *281 Care Comm. v. Arneson*, 638 F.3d 621, 631 (8th Cir. 2011). As in *281 Care*, "the issue presented requires no further factual development, is largely a legal question, and chills allegedly protected First Amendment expression." *Id*. Where the very existence of a law is alleged to chill the exercise of plaintiffs' First Amendment rights, "their alleged injury does not depend on any uncertain, contingent future events, and the courts would gain nothing by allowing the issues in the case to develop further." *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1098 (10th Cir. 2006) (en banc). Thus, Doe's claim is ripe for review.

10

B.  McCulloch is not entitled to Eleventh Amendment immunity.

McCulloch is not entitled to Eleventh Amendment immunity because he is neither a state nor a state official. The Eleventh Amendment bars claims for monetary damages against state officials sued in their official capacities, with certain exceptions. *See Randolph v. Rogers*, 170 F.3d 850, 859 (8th Cir. 1999).

"[T]he Eleventh Amendment does not apply to counties and similar municipal corporations." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 124 n.34 (1984) (quotation and citation omitted). Doe alleges that McCulloch "is the Prosecuting Attorney for St. Louis County, Missouri." Doc. # 1, at ¶ 8. McCulloch "is named as a defendant in his official capacity only." *Id.* "A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010).

Moreover, even if McCulloch were a state official, McCulloch would not be entitled to Eleventh Amendment immunity because Doe seeks only prospective relief. "A State's Eleventh Amendment immunity 'does not bar a suit against a state official to enjoin enforcement of an allegedly unconstitutional statute, provided that such officer [has] some connection with the enforcement of the act.'" *Mo. Prot. & Advocacy Servs., Inc. v. Carnahan*, 499 F.3d 803, 807 (8th Cir. 2007) (quoting *Reprod. Health Servs. of Planned Parenthood of the St. Louis Region, Inc. v. Nixon*, 428 F.3d 1139, 1145 (8th Cir.2005)). McCulloch's broad authority to "commence and prosecute all civil and criminal actions in the prosecuting attorney's county in which the county or state is concerned," provides a sufficient connection to enforcement of the challenged laws to overcome Eleventh Amendment immunity even if McCulloch were a state official.

11

C.  Doe states a claim upon which relief can be granted.

McCulloch argues Doe fails to state a claim upon which relief can be granted, but McCulloch's argument is premised on an inaccurate representation of the Complaint. McCulloch claims Doe wants only to disclose evidence and witnesses not previously made public by McCulloch. Doe's actual allegations belie this narrow view. *See* Doc. # 1, at ¶¶ 19-22, 32-37, 38.

After mischaracterizing Doe's allegations, McCulloch argues Doe fails to state a claim upon which relief can be granted because (1) Missouri laws prohibit disclosure of grand jury information and (2) these laws outweigh Doe's First Amendment rights.

Doe agrees with McCulloch's first point; thus, he has modified his behavior to comport with the law and brought this action seeking prospective relief. Doe disagrees with the second point.

Viewing Doe's allegations as true, Doe states a claim that the interests that might justify subjecting grand jurors to lifetimes of silence in most cases, when applied to the circumstances of this case, are outweighed by the First Amendment right to free expression. The Supreme Court has explained that grand jury secrecy is a tradition dating to the seventeenth century, *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 219 n.9 (1979), identifying "several distinct interests served by safeguarding the confidentiality of grand jury proceedings." *Id.* at 219.[6]

> First, if preindictment proceedings were made public, many
> prospective witnesses would be hesitant to come forward

---

[6]  While there is a tradition of grand juries, states are not required to utilize them. *Hurtado v. People of State of Cal.*, 110 U.S. 516, 518 (1884). And while there is a tradition of secrecy, its value has been questioned. *See, e.g.*, Jonathan Lippman, Chief Judge of the State of New York, The State of the Judiciary 2015 Address (Feb. 17, 2015) (transcript available at http://www.nycourts.gov/ctapps/news/SOJ-2015.pdf) (last visited March 4, 2015) (copy attached). Doe would like to drawn on his own experiences to aid the legislature in reforming the grand jury process. Doc. # 1 at ¶ 36.

> voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There also would be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment. Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule.

*Id.* Although "not eliminated merely because the grand jury has ended its activities," the interests supporting secrecy are reduced when the grand jury has disbanded. *Id.* at 222. In *Douglas Oil*, the Court noted that the grand jury transcripts "already had been given to the target companies in the grand jury investigation[; thus,] release to respondents will not enhance the possibility of retaliatory action by employers in this case." *Id.* at 222 n.13. Yet, the Court noted, "the other factors supporting the presumption of secrecy remain and must be considered." *Id*. Thus, in any given situation, the interest in lifting the permanent veil of secrecy must be weighed against whichever factors supporting secrecy are present.

Because this case involves the right to engage in expressive activity on issues of public concern, any remaining interests supporting secrecy must be weighed against Doe's constitutional rights. Consistent with *Douglas Oil*, the Supreme Court has "recognized that the invocation of grand jury interests is not 'some talisman that dissolves all constitutional protections.'" *Butterworth v. Smith*, 494 U.S. 624, 630 (1990) (quoting *United States v. Dionisio*, 410 U.S. 1, 11 (1973)).[7]  In the context of a witness's First Amendment challenge to the grand jury secrecy rule preventing him from disclosing

---

[7]     This statement by the Supreme Court is the succinct answer to McCulloch's assertion that Doe has failed to state a claim because the invocation of grand jury interest necessarily outweighs Doe's constitutional rights.

his own testimony, the Court determined it "must thus balance respondent's asserted First Amendment rights against Florida's interests in preserving the confidentiality of its grand jury proceedings." *Id.* Accordingly, here this Court will be balancing Doe's asserted First Amendment rights against any existing interests in maintaining grand jury secrecy. Contrary to McCulloch's claim, mere invocation of grand jury secrecy is insufficient to defeat Doe's First Amendment challenge on a motion to dismiss.

This case is about Doe's First Amendment rights. Doe has articulated a cognizable First Amendment claim. As a general rule, "where a person 'lawfully obtains truthful information about a matter of public significance,' [the Supreme Court] ha[s] held that 'state officials may not constitutionally punish publication of the information, absent a need to further a state interest of the highest order.'" *Butterworth*, 494 U.S. 632 (quoting *Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97, 103 (1979); *Florida Star v. B.J.F.*, 491 U.S. 524, 533 (1989)). For example, one question of significant public importance is whether the grand jury investigating Wilson did not return an indictment because McCulloch's office misled the grand jury about the law. *See* Caleb Mason, "Was the Ferguson Grand Jury Misled?" *The Crime Report* (Feb. 24, 2015) (available at http://www.thecrimereport.org/viewpoints/2015-02-was-the-ferguson-grand-jury-misled# (last visited Mar. 4, 2015) (copy attached). McCulloch has given his view of the grand jurors' thoughts. The twelve who know the answer are silenced by the challenged laws.

The restriction here is a content-based restriction on speech. *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 680 (1994)("Content-based speech restrictions are generally unconstitutional unless they are narrowly tailored to a compelling state interest."). A law is content-based where "it require[s] 'enforcement authorities' to 'examine the content of

14

the message that is conveyed to determine whether' a violation has occurred." *McCullen v. Coakley*, 134 S. Ct. 2518, 2531 (2014) (quoting *F.C.C. v. League of Women Voters of Cal.*, 468 U.S. 364, 383 (1984)). In *McCullen*, the law at issue did not require examination of the content of the message that was conveyed. Rather "[w]hether petitioners violate the Act 'depends' not 'on what they say,' but simply on where they say it." *Id.* (quoting *Holder v. Humanitarian Law Project*, 561 U.S. 1, 27 (2010)). Here, enforcement of the grand jury secrecy laws against Doe would require law enforcement to examine the content of his speech to determine if it is subject to the statutory restrictions.

Moreover, McCulloch speaks freely and purportedly openly about the very content about which Doe wishes to speak, just from a different viewpoint. McCulloch is a government official, giving the government's perspective. The First Amendment is "[p]remised on mistrust of governmental power," and, thus, prohibits "restrictions distinguishing among different speakers, allowing speech by some but not others." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340 (2010). Here some of the content that is usually kept secret has already been made public selectively by *McCulloch* to advance his official government narrative, including McCulloch's representation of the views of Doe and the other grand jurors about the evidence, the witnesses, the law, and the grand jury proceeding. As it stands, there has been an almost unprecedented amount of speech about the grand jury process and the grand jurors' views, but, of those who have actual knowledge of the grand jury proceedings, McCulloch has maintained exclusive control of the content and viewpoint disclosed to the public. The challenged laws are part of how McCulloch maintains exclusive control over content and viewpoint.

The claim that a citizen with information on a matter of public concern should be permitted to challenge the government's narrative without going to jail is a cognizable First Amendment claim.

Viewing Doe's allegations as true, there is no remaining interest in maintaining secrecy to weigh against Doe's First Amendment rights. Doe, in his Complaint alleges that "[a]s applied in the circumstances of this case, any interests furthered by maintaining grand jury secrecy are outweighed by the interests secured by the First Amendment." Doc. # 1, at ¶ 58. In particular, "[i]n this case, there is no risk that Plaintiff's expressive activity would result in making public pre-indictment proceedings such that prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony[,]" "cause witnesses who appeared before the grand jury to be less likely to testify fully and frankly," "cause [Darren] Wilson to flee, or to try to influence individual grand jurors to vote against indictment[,]" or "serve to assure that Wilson will not be held up to public ridicule." *Id.* at ¶¶ 45-48. Thus, none of the interests that the Supreme Court has recognized might justify maintaining grand jury secrecy are present in this case.

Moreover, McCulloch's actions suggest the grand jury secrecy laws are apparently not as strict as McCulloch suggests. McCulloch has concluded that another law *requires* the disclosure of much of the information and evidence that the challenged laws indicate must be kept secret. *See* Doc. # 1, Ex. D. McCulloch has not shied from speaking publicly about the witnesses and evidence, the State's counsel to the grand jury, and his own characterizations of Doe's views. *Id.* at ¶¶ 29-32; *see also id.*, Ex. B.

16

Regardless of how the balance might weigh with respect to other grand juries,  Doe has

stated a plausible claim under the circumstances present in this case.

> D.  <u>Abstention is not appropriate</u>.

"In the main, federal courts are obliged to decide cases within the scope of federal

jurisdiction." *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013). Even where

permitted, abstention under any doctrine "is the exception, not the rule." *Colo. River*

*Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976). Abstention "'is an

extraordinary and narrow exception to the duty of a District Court to adjudicate a

controversy properly before it.'" *Id.* (quoting *Allegheny Cnty. v. Frank Mashuda Co.*, 360

U.S. 185, 188 (1959)). There is no basis for abstention in this case.

> *1.  Younger* abstention.

The *Younger* doctrine reflects "longstanding public policy against federal court

interference with state court proceedings[.]" *Younger v. Harris*, 401 U.S. 37, 43 (1971). For

reasons of state sovereignty and comity in state-federal relations, federal courts should not enjoin

ongoing state judicial proceedings. "Under current *Younger v. Harris* doctrine, federal courts

should abstain from exercising their jurisdiction if (1) there is an ongoing state proceeding, (2)

that implicates important state interests, and (3) that provides an adequate opportunity to raise

any relevant federal questions." *Tony Alamo Christian Ministries v. Selig*, 664 F.3d 1245, 1249

(8th Cir. 2012) (citations omitted).

There is no ongoing state proceeding. "For purposes of applying *Younger* abstention, the

relevant time for determining if there are ongoing state proceedings is when the federal

complaint is filed." *Id.* at 1250. No criminal misdemeanor or contempt charges have been

commenced against Doe.[8] Thus, *Younger* abstention is not warranted.

Moreover, any future state court proceeding would not provide Doe with an adequate

opportunity to raise his First Amendment claim without risking the loss of his liberty. Any such

proceeding would be initiated only *after* Doe was alleged to have engaged in expressive activity

that violates the challenged laws. But Doe has asserted that he has modified his behavior to *not*

violate the laws. Doc. # 1, at ¶¶ 40-41. Doe's injury is occurring now. In the First Amendment

context, an individual challenging a law "'should not be required to await and undergo a criminal

prosecution as the sole means of seeking relief.'" *Holder v. Humanitarian Law Project*, 561 U.S.

1, 15 (2010) (quoting *Babbitt*, 442 U.S. at 298). McCulloch's plea for abstention undermines this

principle. The opportunity to raise a First Amendment claim in defense of a future criminal

charge is not an adequate opportunity.

*2. Pullman abstention.*

Under the abstention doctrine of *Railroad Commission of Texas v. Pullman Co.*, 312 U.S.

496 (1941), "federal courts should abstain from decision when difficult and unsettled questions

of state law must be resolved before a substantial federal constitutional question can be decided."

*Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 236 (1984). "*Pullman* abstention is limited to

uncertain questions of state law." *Id.* (citing *Colo. River,* 424 U.S. at 813). That is, if a state court

might construe the law in a way that obviates the need to decide a federal question, abstention

prevents "both unnecessary adjudication ... and 'needless friction with state policies.'" *Id.*

(quoting *Pullman*, 312 U.S. at 500).

---

[8]     This lack of an ongoing state-court proceeding distinguishes this case from the *Younger*-abstention case cited by McCulloch, *Norwood v. Dickey*, 409 F.3d 901, 903 (8th Cir. 2005).

*Pullman* abstention is not warranted because McCulloch points to no uncertainty about the meaning of state law. "Where there is no ambiguity in the state statute, the federal court should not abstain but should proceed to decide the federal constitutional claim." *Wisconsin v. Constantineau*, 400 U.S. 433, 439 (1971). The challenged laws are not subject to an interpretation that might avoid the First Amendment question raised by Doe. Thus, the primary rationale for *Pullman* abstention is absent.[9]

Indeed, McCulloch has not shown that any of the *Pullman* considerations support abstention. "*Pullman* abstention requires consideration of (1) the effect abstention would have on the rights to be protected by considering the nature of both the right and necessary remedy; (2) available state remedies; (3) whether the challenged state law is unclear; (4) whether the challenged state law is fairly susceptible to an interpretation that would avoid any federal constitutional question; and (5) whether abstention will avoid unnecessary federal interference in state operations." *Beavers v. Ark. State Bd. of Dental Exam'rs*, 151 F.3d 838, 841 (8th Cir. 1998). McCulloch appears to suggest Doe should violate the grand jury secrecy rules and wait to see what happens. *Pullman* does not require Doe to put his liberty at peril to challenge the constitutionality of the laws that silence him.

IV.    Conclusion

For the foregoing reasons, McCulloch's motion to dismiss should be denied.

---

[9]      *Pullman* abstention has generally been disfavored in First Amendment challenges to state statutes. *Beavers v. Ark. State Bd. of Dental Exam'rs*, 151 F.3d 838, 841 (8th Cir. 1998) (citing *City of Houston v. Hill*, 482 U.S. 451 (1987); *Dombrowski v. Pfister*, 380 U.S. 479, 489-90 (1965); *George v. Parratt*, 602 F.2d 818, 820 (8th Cir. 1979)); *accord Phelps-Roper v. Heineman*, 710 F. Supp. 2d 890, 904 (D. Neb. 2010).

Respectfully submitted,

/s/ Anthony E. Rothert
Anthony E. Rothert, #44827MO
Grant R. Doty, #60788MO
Andrew McNulty, #67138MO
American Civil Liberties Union of
        Missouri Foundation
454 Whittier Street
St. Louis, Missouri 63108
Phone: 314-652-3114
Fax: 314-652-3112
trothert@aclu-mo.org
gdoty@aclu-mo.org
amcnulty@aclu-mo.org

Gillian R. Wilcox, #61278MO
American Civil Liberties Union of
        Missouri Foundation
3601 Main Street
Kansas City, Missouri 64111
gwilcox@aclu-mo.org

Sowers & Wolf, LLC
D. Eric Sowers, EDMO 24970MO
es@sowerswolf.com
Ferne P. Wolf, EDMO 29326MO
fw@sowerswolf.com
Joshua M. Pierson, EDMO 65105MO
jp@sowerswolf.com
530 Maryville Centre Drive, Suite 460
St. Louis, MO 63141
314-744-4010/314-744-4026 fax

Attorneys for Plaintiff

Certificate of Service

I certify that on March 5, 2015, a copy of the foregoing was served by operation of the

Court's CM/ECF system on counsel for Defendant.

/s/ Anthony E. Rothert