**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GRAND JUROR DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case 4:15-cv-6-RWS |
| | ) | |
| ROBERT P. MCCULLOCH, in his official capacity as Prosecuting Attorney for St. Louis County, Missouri, | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT ROBERT P. MCCULLOCH'S MOTION TO DISMISS**

## INTRODUCTION

Plaintiff was a member of the state grand jury that declined to indict former Ferguson Police Officer Darren Wilson in the August 2014 shooting death of Michael Brown. Plaintiff began his grand jury service on May 7, 2014, when he was sworn and received his charge from the Honorable Carolyn C. Whittington of the St. Louis County Circuit Court. *See* Exhibit A, attached hereto.

Not long after Wilson shot Brown on August 9, 2014, Defendant publicly declared his intention to submit the matter to a grand jury for consideration, and on August 20, 2014, Defendant appeared before the grand jury to introduce himself and his staff, explain the situation, and to take questions. *See* Transcript of Grand Jury, Vol. I, at 5:1-24:8, filed by Plaintiff as part of Exhibit C to his complaint; *see also* Doc. 1 ¶ 17 (quoting from Defendant's August 20, 2014, remarks to the grand jury).

Plaintiff's grand jury service was formally extended on September 10, 2014, when he and his fellow grand jurors were recharged by Judge Whittington for the express purpose of investigating the circumstances of Brown's death. *See* Exhibit B, attached hereto.

On November 24, 2014, the grand jury returned a "no true bill" on all the charges against Officer Wilson, and Plaintiff was discharged from his grand jury service.

Despite having been duly sworn and twice charged to keep secret the counsel of the state, his fellows, and his own, Plaintiff now claims it is intolerable that he should be held to his oath or made to abide by his charge. Plaintiff acknowledges that the conduct in which he wishes to engage would violate his charge and place him in contempt of the St. Louis County Circuit Court, and indeed, on November 17, 2014, Judge Whittington rejected a request by the grand jury to issue a statement when it completed its work. *See* Exhibit C, attached hereto.[1]

However, rather than seeking declaratory or other relief from the St. Louis County Circuit Court where he received his charge, Plaintiff filed suit against Defendant in federal court requesting this Court's permission to ignore Judge

[1] Exhibits A, B, and C are offered to establish that Plaintiff lacks standing, and thus, may be considered by the Court in connection with Defendant's motion to dismiss. *See, e.g.*, *Taylor v. Lew*, No. 4:13-CV-2481-SNLJ, 2014 WL 4724689, at *3 (E.D. Mo. Sept. 23, 2014) ("Motions to dismiss based on Rule 12(b)(1) may either facially attack plaintiff's allegations or present evidence to challenge the factual basis on which subject matter jurisdiction rests." (citing *Jessie v. Potter*, 516 F.3d 709, 712–13 (8th Cir. 2008)). However, given that said exhibits are being offered by Defendant for the first time in his reply brief, Defendant would not object if Plaintiff were to request leave to file a surresponse in order to counter Defendant's exhibits.

Whittington's orders and eschew the responsibilities he assumed as a Missouri grand juror.

As argued below, Plaintiff has no right under the First Amendment to violate his oath or disregard Missouri law, and the Court should dismiss Plaintiff's claims for failure to state a claim. However, even if Plaintiff's claims were otherwise colorable, this Court should not permit Plaintiff to sidestep the court to whom Plaintiff swore his oath and by which he was twice charged to obey the law.

## ARGUMENT

### I. Court lacks subject matter jurisdiction over Plaintiff's claims.

#### A. Standing.

In order to establish standing for the purposes of Article III of the Constitution, a plaintiff must show, among other things, that his injuries would be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). An injury is redressable if it "fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976).

In this case, Plaintiff claims to fear prosecution by Defendant under various statutes, including sections 540.320, 540.310, 540.080, and 540.120. Mo. Rev. Stat. §§ 540.320, 540.310, 540.080, & 540.120. However, of the four statutes cited by Plaintiff, only section 540.320 carries a criminal penalty enforceable against grand jurors. Mo. Rev. Stat. § 540.320. Accordingly, unless Plaintiff plans to violate

section 540.320, he cannot show that an injunction entered against Defendant would do anything to redress his purported injuries or allay his fears. *Simon*, 426 U.S. at 41-42; *see also Wieland v. U.S. Dep't of Health & Hum. Serv.*, 978 F. Supp. 2d 1008, 1014-15 (E.D. Mo. 2013).

Plaintiff did not allege in his complaint that he wanted to disclose any evidence or witnesses that have not already been made public. However, in his opposition to Defendant's motion to dismiss, Plaintiff took the remarkable position that he should be allowed to disclose whatever information he wants, whenever he wants, regardless of the settled expectations of witnesses and other participants in the grand jury proceedings, the effect such disclosure may have on future grand juries, or the danger such disclosure might pose to the witnesses or other persons whose identities thus far have remained a secret.

Given that Plaintiff has not alleged in his complaint that he intends to disclose evidence or witnesses that have not already been made public, Defendant is skeptical that Plaintiff is truly at risk of being prosecuted for making such disclosures. *Cf. Zanders v. Swanson*, 573 F.3d 591, 593-94 (8th Cir. 2009) (a plaintiff "must face a credible threat of present or future prosecution under the statute for a claimed chilling effect to confer standing to challenge the constitutionality of a statute that both provides for criminal penalties and abridges First Amendment rights"). However, assuming for the sake of argument that Plaintiff wishes to proceed as recklessly as he suggests, the First Amendment would not shield Plaintiff from criminal prosecution under section 540.320. Indeed, as argued by

Defendant in his initial memorandum and in Part II below, grand jury secrecy is intended to encourage freedom of disclosure by witnesses and others, and an order permitting Plaintiff to disregard the restrictions placed on him by section 540.320 would undermine the integrity of Missouri's grand jury system and place witnesses and others in jeopardy.

Although Plaintiff requests the Court to enjoin Defendant from prosecuting Plaintiff under section 540.320, most of the information Plaintiff wishes to divulge is protected from disclosure by sections 540.080 ("Oath of grand jurors") and 540.310 ("Cannot be compelled to disclose vote"). Mo. Rev. Stat. §§ 540.320, 540.310, & 540.080. However, given that neither section 540.080 nor section 540.310 carries a criminal penalty provision, Plaintiff cannot show an injunction entered against Defendant would redress Plaintiff's purported injuries. *Simon*, 426 U.S. at 41-42; Mo. Rev. Stat. §§ 540.080 & 540.310.

In his opposition to Defendant's motion to dismiss, Plaintiff concedes that sections 540.080 and 540.310 do not carry criminal penalties. Nevertheless, Plaintiff argues that "[r]ules governing grand jury proceedings have long been enforced through criminal contempt actions," and that "[Defendant], as the prosecuting attorney for St. Louis County, is responsible for commencing and prosecuting any contempt proceeding." Doc. 33 at 5-6.

Although Defendant has broad authority as the elected prosecutor for St. Louis County to initiate criminal proceedings on behalf of the County or the State,

see Mo. Rev. Stat. § 56.060, Plaintiff has cited no authority to support his contention that Defendant could unilaterally prosecute Plaintiff for contempt.

Criminal contempt is a power given to the courts, not prosecutors, and "is not, strictly speaking, a criminal proceeding." *Ramsey v. Grayland*, 567 S.W.2d 682, 686 (Mo. App. 1978); *State ex rel. Chassaing v. Mummert*, 887 S.W.2d 573, 579 (Mo. banc 1994) (same); *see also Smith v. Pace*, 313 S.W.3d 124, 129-30 (Mo. banc 2010) ("Missouri courts have both an inherent power under the constitution to punish for contempt as well as authority to try contempt-of-court cases under the statutory crime of contempt"); *Osborne v. Purdome*, 244 S.W.2d 1005, 1012 (Mo. banc 1951) (courts have inherent power to hold persons in contempt); Mo. Rev. Stat. § 476.110 (granting "[e]very court of record" the power to punish criminal contempt). Indeed, and as the cases relied on by Plaintiff demonstrate, persons challenging a judgment must seek a writ against the issuing judge rather than against the prosecutor. *Smith*, 313 S.W.3d at 136 (reversing finding of contempt against attorney by "complainant" judge); *Ramsey*, 567 S.W.2d at 691 (sufficient evidence to support trial judge's finding of contempt); *Ex parte Creasy*, 148 S.W. 914, 921 (Mo. banc 1912) (reversing trial judge's finding of contempt against grand jury witness); *Ex parte Shull*, 121 S.W. 10, 12 (Mo. 1909) (reversing trial judge's finding of contempt against witness alleged to have been disrespectful).

In this case, Plaintiff makes much of the fact that Defendant handed the grand jurors copies of Missouri's secrecy laws before they were discharged, and thus, argues Defendant's action shows he "embraced rather than rejected the

statutes." Doc. 33 at 4; Doc. 1 ¶ 28. However, whether Defendant has "embraced" or "rejected" the laws governing grand jury secrecy is not relevant to whether an injunction against Defendant would redress Plaintiff's purported injuries. Indeed, Judge Whittington has a clear prerogative to enforce her own orders regardless of Defendant's participation or consent, and Defendant has no independent authority under the law to prosecute Plaintiff for contempt absent the approval and active participation of the court. Accordingly, Plaintiff cannot establish that his purported injuries can fairly be traced to Defendant or that an injunction against Defendant would redress said injuries. *Simon*, 426 U.S. at 41-42.

**B. Eleventh Amendment immunity.**

Defendant is entitled to Eleventh Amendment immunity on Plaintiff's claims in this case because, as argued above, Defendant has no independent authority to prosecute Plaintiff for contempt absent the approval and active participation of the St. Louis County Circuit Court where Plaintiff was charged. *See, e.g.*, *Ex Parte Young*, 209 U.S. 123, 157 (1908) (defendant official must have "some connection with the enforcement of the act" to be enjoined); *see also 281 Care Comm. v. Arneson*, 766 F.3d 774, 797 (8th Cir. 2014).

In his opposition to Defendant's motion to dismiss, Plaintiff argues that Defendant is not entitled to immunity under the Eleventh Amendment because he is neither a state nor a state official. Doc. 33 at 11. However, Plaintiff's arguments lack merit.

In deciding whether a particular instrumentality of the state may invoke immunity under the Eleventh Amendment, the court must "inquire[] into the relationship between the State and the entity in question." *Regents of the Univ. of Calif. v. Doe*, 519 U.S. 425, 429 (1997). In making this inquiry, the courts may examine the essential nature of the proceeding at issue or the nature of the entity created by state law. *Id.* at 429-30.

In this case, Plaintiff is requesting the Court to enjoin Defendant from acting in his official capacity as the elected prosecutor for St. Louis County to prosecute Plaintiff under Missouri law. Doc. 1 ¶ 8. Defendant has broad powers to prosecute persons in St. Louis County under state law, see Mo. Rev. Stat. § 56.060, and the prosecution Plaintiff seeks to enjoin would implicate Defendant's powers and duties as a quasi-judicial officer representing the people of Missouri. *State ex rel Jackson County Prosecuting Attorney v. Prokes*, 363 S.W.3d 71, 85 (Mo. App. W.D. 2011) ("a prosecuting attorney in a criminal case acts as a quasi-judicial officer representing the people of the State."); *see also State v. Todd*, 433 S.W.2d 550, 554 (Mo. 1968) (authority of county prosecutors in Missouri is carved out of Missouri Attorney General's overriding authority as state's chief legal officer). Accordingly, Defendant may invoke immunity under the Eleventh Amendment. *Regents of the Univ. of Calif.*, 519 U.S. at 429; *see also McMillan v. Monroe County*, 520 U.S. 781, 786-87 (1997); *Bibbs v. Newman*, 997 F. Supp. 1174, 1177-81 (S.D. Ind. 1998) (state prosecutor was state official for Eleventh Amendment purposes).

**C. Plaintiff's claims are not ripe.**

To the extent Plaintiff has standing to assert claims against Defendant under section 540.320, such claims are not ripe. Mo. Rev. Stat. § 540.320. Indeed, given that it is unclear from Plaintiff's complaint whether he truly intends to divulge witnesses and evidence that has been redacted or otherwise withheld by Defendant, it would be premature for the Court to enjoin a prosecution that may never occur. *See, e.g.*, *Missouri Roundtable for Life v. Carnahan*, 676 F.3d 665, 674 (8th Cir. 2012) (ripeness depends on "whether the case involves contingent future events that may not occur as anticipated, or indeed may not occur at all"). However, assuming for the sake of argument that Plaintiff plans to disclose witnesses and evidence that have not been made public, the Court should nevertheless abstain from deciding Plaintiff's claims, as the applicability of the Missouri Sunshine Law to such information presents an "uncertain issue of state law" that should be settled by a Missouri court. *See Harman v. Forssenius*, 380 U.S. 528, 534 (1965) (citing *R.R. Comm'n v. Pullman Co.*, 312 U.S. 496 (1941)).

**II. Plaintiff has not stated a claim upon which relief may be granted.**

In his opposition to Defendant's motion to dismiss, Plaintiff argues that Missouri has "no remaining interest in maintaining secrecy to weigh against [Plaintiff's] First Amendment rights" in this case, and he complains that the information released by Defendant thus far provides only "an appearance of transparency" but does not "fully portray the proceedings before the grand jury." Doc. 33 at 6, 16; *see also* Doc. 1 ¶¶ 33, 58. Plaintiff further complains that

Defendant's public statements have mischaracterized Plaintiff's views, and he seeks an injunction giving him full freedom to discuss his experience and opinions as a grand juror, including his impression that the presentation of evidence was handled differently by the state in the Wilson investigation than in the hundreds of other matters considered by Plaintiff's grand jury. Doc. 1 ¶¶ 19-20.

Plaintiff's arguments lack merit, and the Court should dismiss Plaintiff's complaint for failure to state a claim. The Supreme Court has consistently recognized that the proper functioning of the grand jury system depends upon the secrecy of grand jury proceedings. *Douglas Oil Co. of California v. Petrol Stops Northwest*, 441 U.S. 211, 218-19 (1979) (citing *U.S. v. Proctor & Gamble Co.*, 356 U.S. 677 (1958)). The grand jury system is deeply rooted in the federal and state courts in the United States, *see Brandzburg v. Hayes*, 408 U.S. 665, 686-87 (1972), and "[i]n the absence of a clear indication in a statute or Rule, [a court] must always be reluctant to conclude that a breach of [grand jury] secrecy has been authorized." *U.S. v. Sells Eng'g, Inc.*, 463 U.S. 418, 425 (1983) (citing *Illinois v. Abbott & Assoc., Inc.*, 460 U.S. 557, 572 (1983)); *see also Mannon v. Frick*, 295 S.W.2d 158, 162 (Mo. 1956); *State ex rel Clagett v. James*, 327 S.W.2d 278, 284 (Mo. banc 1959); *Palmentere v. Campbell*, 205 F. Supp. 261, 264 (W.D. Mo. 1962). Although the government's interest in secrecy is said to diminish once a grand jury has completed its work, "in considering the effects of disclosure on grand jury proceedings, the courts must consider not only the immediate effects upon a particular grand jury,

but also the possible effect upon the functioning of future grand juries." *Douglas Oil*, 441 U.S. at 222.

Plaintiff's term as a grand juror began in May 2014, and ended in November 2014. During that time, Plaintiff and his fellow grand jurors considered hundreds of cases presented by Defendant's office. Although Defendant has publicly released redacted copies of all the testimony and nearly all the evidence presented to the grand jury in connection with the Wilson investigation, *see* Exhibit C to Plaintiff's complaint, he has not released any information from any of the hundreds of other cases considered by Plaintiff's grand jury.

Plaintiff has provided no support for his contention that he should be permitted to disclose information relating to any of the hundreds of cases the grand jury considered prior to the Wilson investigation. Nor has Plaintiff provided a valid basis for disclosing witnesses or evidence that Defendant has withheld from the Wilson investigation. Defendant withheld the names of witnesses and others in order to protect them from harm. *See* Doc. 1-4; *see also* Mo. Rev. Stat. § 610.100.3. However, such redactions are also justified by the need to protect the settled expectations of witnesses and others that appeared before Plaintiff's grand jury, and to encourage the participation of witnesses in future grand juries. *Douglas Oil*, 441 U.S. at 222; *see also Rehberg v. Paulk*, 132 S.Ct. 1497, 1509 (2012) (disclosure of preindictment grand jury proceedings would chill participation by witnesses); *Brandzburg*, 408 U.S. at 700 (characteristic secrecy of grand jury proceedings protects interests of those compelled to participate in grand jury process); *CBS Inc.*

*v. Campbell*, 645 S.W.2d 30, 33 (Mo. App. E.D. 1983) ("The secrecy of the grand jury proceeding . . . ameliorates the harmful effects of disclosure that would result in an ordinary civil or criminal trial.").[2]

Plaintiff complains that Defendant has mischaracterized Plaintiff's view of the evidence, but such claims are baseless. Defendant does not know Plaintiff's identity or how he voted, and Defendant has never purported to speak for any grand juror individually. Although Plaintiff may now regret having sworn his oath and accepted his charge, Plaintiff has no right to publicly report his impressions, and it has long been established that a prosecutor, unlike a grand juror, is competent to discuss the evidence presented to a grand jury. *See, e.g.*, *State v. Grady*, 84 Mo. 220, 224 (1884); *see also In the Matter of Interim Report of the Grand Jury*, 553 S.W.2d 479, 482 (Mo. banc 1977); *In the Matter of the Report of the Grand Jury*, 612 S.W.2d 864, 865-66 (Mo. App. E.D. 1981); *In the Matter of Regular Report of Grand Jury*, 585 S.W.2d 76, 77 (Mo. App. E.D. 1979).

Moreover, and notwithstanding Plaintiff's cavils that the information released by Defendant has not "fully portrayed" the grand jury proceedings, Plaintiff has provided no support for his suggestion that the release of *some* grand jury information necessarily requires the release of *everything*. Indeed, complete transparency is anathema to the very nature of a grand jury, which depends upon

---

[2] On March 4, 2015, the United States Department of Justice ("DOJ") issued an 86-page report summarizing the evidence against Wilson. The DOJ report, a copy of which is available online at http://www.justice.gov/usao/pam/Documents/DOJ%20Report%20on%20Shooting%20of%20Michael%20Brown.pdf, found that Wilson's use of deadly force was not "objectively unreasonable," and concluded it was not appropriate to present the matter to a federal grand jury for indictment. *Id.* at 5. With the exception of Darren Wilson and Michael Brown, the DOJ redacted the names of all individuals to "safeguard against an invasion of their personal privacy." *Id.* at 6 n.2

secrecy and anonymity for its proper functioning. *See Douglas Oil*, 441 U.S. at 222; *Rehberg*, 132 S.Ct. at 1509; *Sells Eng'g, Inc.*, 463 U.S. at 425; *Mannon*, 295 S.W.2d at 162; *Palmentere*, 205 F. Supp. at 264; *see also Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35 (1984) (state court protective orders permit civil litigants to receive "information that not only is irrelevant but if publicly disclosed could be damaging to reputation and privacy").

Nor does Plaintiff offer any support for his position that he should be allowed to disclose the counsel of the state, his fellows, or his own, the identities of his fellow grand jurors, or the content and nature of the grand jury's votes and deliberations. Mo. Rev. Stat. §§ 540.080 & 540.310. Such information is absolutely prohibited from disclosure in Missouri, *Mannon*, 295 S.W.2d at 162, and the *Butterworth* decision relied on by Plaintiff provides no authority to suggest that a grand juror has a right to share his "experiences" or opinions as such. *Butterworth v. Smith*, 494 U.S. 624, 629 n.2, 631-32 (1990) (witness may "divulge information of which he was in possession before he testified before the grand jury, and not information which he may have obtained as a result of his participation in the proceedings of the grand jury"); *see also Rhinehart*, 467 U.S. at 32 ("A litigant has no First Amendment right of access to information made available only for the purposes of trying his suit." (citing *Zemel v. Rusk*, 381 U.S. 1, 16-17 (1965)). Indeed, it is well established that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another," *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973), and although the law disfavors the ad hoc creation of new categories of prohibited

speech, the Supreme Court has recognized that speech may be proscribed in order to protect the integrity of important governmental processes. *See U.S. v. Alvarez*, 132 S.Ct. 2537, 2546 (2012).

Given the long line of federal and Missouri cases recognizing the central importance of secrecy to the proper functioning of grand juries, there is no question that Missouri's interest in secrecy outweighs whatever personal interest Plaintiff may have in sharing his experience and opinions. *See, e.g.*, *Douglas Oil*, 441 U.S. at 222; *Rehberg*, 132 S.Ct. at 1509; *Sells Eng'g, Inc.*, 463 U.S. at 425; *Mannon*, 295 S.W.2d at 162; *State ex rel Clagett*, 327 S.W.2d at 284; *Palmentere*, 205 F. Supp. at 264; *see also Butterworth*, 494 U.S. at 636-37 (loosening grand jury secrecy risks "subject[ing] grand jurors to a degree of press attention and public prominence that might in the long run deter citizens from fearless performance of their grand jury service" (Scalia, J., concurring)). Accordingly, the Court should dismiss Plaintiff's complaint for failure to state a claim.

## III. The Court should abstain from exercising jurisdiction.

The issues raised by Plaintiff in this case involve important questions of state law in which Missouri has a strong interest. Accordingly, in the event this Court finds that Plaintiff's claims are otherwise colorable and ripe for adjudication, it should abstain from exercising its jurisdiction. *Beavers v. Arkansas State Bd. of Dental Examiners*, 151 F.3d 838, 840 (8th Cir. 1990) (abstention is appropriate "in order to preserve traditional principles of equity, comity, and federalism" (quotations omitted)). Indeed, abstention is particularly appropriate in this case,

where Plaintiff seeks to engage in conduct that would place him in direct violation of Missouri law and in contempt of a state court's orders. *See Chem. Fireproofing Corp. v. Bronksa*, 553 S.W.2d 710, 718 (Mo. App. 1977) ("Contempt proceedings are sui generis and are triable only by the court against whose authority the contempts are charged." (punctuation and citations removed)); *see also Douglas Oil*, 441 U.S. at 226 ("in general, requests for disclosure of grand jury transcripts should be directed to the court that supervised the grand jury's activities").

Although Plaintiff suggests that Missouri's courts will not afford him a sufficient opportunity to assert his claimed rights under the First Amendment, the Eighth Circuit has cautioned federal courts against "engag[ing] any presumption 'that the state courts will not safeguard federal constitutional rights.'" *Norwood v. Dickey*, 409 F.3d 901, 904 (8th Cir. 2005) (quoting *Neal v. Wilson*, 112 F.3d 351, 357 (8th Cir.1997)). Accordingly, should the Court find that it has jurisdiction and that Plaintiff's claims are otherwise colorable, the Court should abstain from exercising its jurisdiction in the interest of equity, comity, and federalism.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Defendant McCulloch respectfully requests the Court grant his Motion to Dismiss, and any other relief the Court deems fair and appropriate.

Respectfully submitted,

**CHRIS KOSTER**,
Attorney General

  /s/ David Hansen
**DAVID HANSEN**
Assistant Attorney General
Missouri Bar No. 40990
Post Office Box 899
Jefferson City, MO  65102
Phone: (573) 751-9635
Fax: (573) 751-2096
David.Hansen@ago.mo.gov

**PETER J. KRANE**
St. Louis County Counselor's Office
Missouri Bar No. 32546
41 South Central Avenue
Clayton, MO  63015
Phone: (314) 615-7042
PKrane@stlouisco.com

**H. ANTHONY RELYS**
Assistant Attorney General
Missouri Bar No. 63190
Assistant Attorney General
Post Office Box 861
St. Louis, MO  63188
Phone: (314) 340-7861
Fax: (314) 340-7029
Tony.Relys@ago.mo.gov

**ATTORNEYS FOR DEFENDANT
ROBERT P. MCCULLOCH**

**CERTIFICATE OF SERVICE**

I hereby certify that on March 27, 2015, the foregoing **Reply Memorandum in Support of Defendant Robert P. McCulloch's Motion to Dismiss** was filed and served via the Court's electronic filing system upon all counsel of record.

/s/ David Hansen
David Hansen
Assistant Attorney General