UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| GRAND JUROR DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:15 CV 6 RWS |
| | ) | |
| ROBERT P. MCCULLOCH, in | ) | |
| his official capacity as Prosecuting | ) | |
| Attorney for St. Louis County, | ) | |
| Missouri, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

Plaintiff Grand Juror Doe (Juror)[1] seeks a declaratory judgment that

Missouri laws criminalizing Juror's disclosure of information about her experience

on a State of Missouri grand jury are unconstitutional as applied.   Juror alleges that

these Missouri statutes violate her free speech rights under the First Amendment to

United States Constitution.   Defendant St. Louis County Prosecuting Attorney

Robert McCulloch has moved to dismiss the complaint on numerous grounds.   One

of the grounds for dismissal is based on the doctrine of abstention.   Because the

issue of whether the State of Missouri can require a duly sworn grand juror to

preserve the secrecy of grand jury proceedings concerns a fundamental element of

---

[1] Plaintiff in this matter has been given permission to proceed under an alias in order to preserve anonymity.   I will

how Missouri chooses to maintain, as a sovereign state, the integrity of its criminal
court proceedings, and a decision by the Missouri state courts could avoid a need
for a decision on federal constitutional grounds, I find that this case should be
dismissed to allow Missouri courts to address this important Missouri state issue.

### *Background*

Plaintiff Juror began serving as a grand juror for the Circuit Court of St.
Louis County on May 7, 2014.   That grand jury's term of service was originally set
to expire on September 10, 2014.   On August 9, 2014, while on duty as a police
officer for the City of Ferguson, Officer Darren Wilson shot and killed Michael
Brown.   Defendant Robert McCulloch, the Prosecuting Attorney for St. Louis
County, presented the matter to the grand jury to decide whether there was probable
cause to believe Officer Wilson violated any Missouri state criminal laws in the
death of Mr. Brown.   The St. Louis County Circuit Court extended the term of the
grand jury from September 10, 2014 to January 7, 2015 to allow the grand jury to
consider the Wilson matter.

The prosecuting attorney's staff presented evidence regarding the case to the
grand jury over a several week period.   On November 24, 2014, upon completion
of their investigation of the Wilson matter, the grand jury returned a "no true bill"

refer to Juror by the pronouns she and her although whether Juror is male or female is not known.

2

declining to indict Officer Wilson.   During his announcement of the grand jury's

decision, McCulloch made public statements at a press conference about the jury's

investigation and its decision not to issue an indictment.   McCulloch also released

evidence presented to the grand jury, including transcripts, reports, interviews, and

forensic evidence.   However, the transcripts and documents were redacted in a

manner to keep secret the identities of the grand jurors, witnesses, and other persons

connected to the investigation.   In addition, McCulloch did not release the votes or

deliberations of the grand jury.

     Plaintiff Juror's complaint alleges that, from her perspective, the St. Louis

County prosecuting attorney's presentation of the evidence in the Wilson matter to

the grand jury was markedly different from other cases presented to the grand jury.

Juror alleges that the "State's counsel" to the grand jury was different in significant

ways from previous cases; the investigation had a stronger emphasis on the victim

than in other cases; and, the "presentation of the law to which the grand jurors were

to apply the facts was made in a muddled and untimely manner."

     Juror alleges that McCulloch's statements at the press conference

"characterizes the views of the grand jury collectively toward the evidence,

witnesses, and the law, in a manner that does not comport with [Juror's] own

opinions."

3

*Grand jurors take an oath as members of the grand jury to keep grand jury proceedings secret*

All grand jury members take an oath of secrecy regarding their service on a grand jury.   That oath is found in section 540.080 R.S.Mo. which states:

> Grand jurors may be sworn in the following form:
> "Do you solemnly swear you will diligently inquire and true presentment make, according to your charge, of all offenses against the laws of the state committed or triable in this county of which you have or can obtain legal evidence; the counsel of your state, your fellows and your own, you shall truly keep secret? You further swear that you will present no one for any hatred, malice or ill will; neither will you leave unpresented any one for love, fear, favor or affection, or for any reward or the hope or promise thereof, but that you will present things truly as they come to your knowledge, to the best of your understanding, according to the laws of this state, so help you God."

A St. Louis County Circuit judge required the grand jurors in this case to take the oath twice – both at the beginning of their service and again when the grand jury's term was extended. [2]

Juror now wants to speak out about her experience as a grand juror and to express opinions about the evidence and the investigation in the Wilson matter in particular, and about other grand jury cases generally for the purpose of comparison.   Juror wants to comment on whether McCulloch's release of records and statements at the press conference accurately reflected the grand jurors' views of the evidence and witnesses in the Wilson matter.   Juror also wants to express the

view that the evidence and law were presented differently in the Wilson matter than Juror had experienced in other cases presented to the grand jury.   Juror asserts that her motivation behind these proposed disclosures is to "aid in educating the public about how grand juries function" and to use Juror's "own experiences to advocate for legislative change to the way grand juries are conducted in Missouri."

Juror alleges that four State of Missouri statutes have a "chilling effect" which limit her speech.   The statutes cited by Juror are Missouri Revised Statutes sections 540.080, 540.120, 540.310, and 540.320.[3]   Juror seeks a declaratory judgment that "Missouri laws criminalizing speech by [Juror], about [Juror's] experiences as a state grand juror for the investigation of the [Wilson matter], are unconstitutional as applied."   Juror asserts that her free speech rights under the First Amendment to the United States Constitution override the oath of secrecy she took as a grand juror, and, as a result, void any Missouri state statute which would criminalize Juror's proposed speech regarding the grand jury's proceedings.

Defendant McCulloch has moved to dismiss the complaint on several grounds, including that the doctrine of abstention should be followed in this case.

---

[2] On May 7, 2014 and on September 10, 2014.

[3] I note that of these four statutes, only section 540.320 criminalizes disclosures by a grand juror.   That section states that: "No grand juror shall disclose any evidence given before the grand jury, nor the name of any witness who appeared before them, except when lawfully required to testify as a witness in relation thereto; nor shall he disclose the fact of any indictment having been found against any person for a felony, not in actual confinement, until the defendant shall have been arrested thereon. Any juror violating the provisions of this section shall be deemed guilty of a class A misdemeanor."

Juror opposes the motion.

### *Legal Standard*

When ruling on a motion to dismiss, I must accept as true all factual allegations in the complaint and view them in light most favorable to the Plaintiff. Fed. R. Civ. P. 12(b)(6); <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007).   The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of the complaint.   An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). To survive a motion to dismiss, a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level. <u>Id.</u> at 555.

### *Discussion*

At issue in this case is the delicate balance between the secrecy of grand jury proceedings as required by Missouri state law and the First Amendment free speech rights of the individual grand jurors.   On the one hand, conducting grand jury proceedings in secret is a longstanding and important tradition in the American criminal justice system.   On the other hand, free speech is a fundamental right expressly preserved by the First Amendment.   As fundamental a right as free speech is, however, it is not unlimited and unqualified.   The United States Supreme

6

Court has observed that "[t]he societal value of speech must, on occasion, be subordinated to other values and considerations."   <u>Dennis v. United States</u>, 341 U.S. 494, 503-504 (1951).

*The tradition of grand jury secrecy*

The use of grand juries has been a part of American law since the founding of our country.   The United States Supreme Court has noted that:

> The grand jury has always occupied a high place as an instrument of justice in our system of criminal law—so much so that it is enshrined in the Constitution.   It serves the dual function of determining if there is probable cause to believe that a crime has been committed and of protecting citizens against unfounded criminal prosecutions.   It has always been extended extraordinary powers of investigation and great responsibility for directing its own efforts…

> These broad powers are necessary to permit the grand jury to carry out both parts of its dual function. Without thorough and effective investigation, the grand jury would be unable either to ferret out crimes deserving of prosecution, or to screen out charges not warranting prosecution.

> The same concern for the grand jury's dual function underlies the long-established policy that maintains the *secrecy* of the grand jury proceedings in the federal courts …

> Grand jury *secrecy*, then, is as important for the protection of the innocent as for the pursuit of the guilty. Both Congress and this Court have consistently stood ready to defend it against unwarranted intrusion. In the absence of a clear indication in a statute or Rule, we must always be reluctant to conclude that a breach of this *secrecy* has been authorized.

7

<u>United States v. Sells Engineering, Inc.</u>, 463 U.S. 418, 422-425 (1983) (emphasis

added) (internal quotations and citation omitted).

     The United States Supreme Court has also recognized that the secrecy of

grand jury proceedings serves as an important governmental interest.

> We consistently have recognized that the proper functioning of
> our grand jury system depends upon the *secrecy* of grand jury
> proceedings. In particular, we have noted several distinct interests
> served by safeguarding the *confidentiality* of grand jury proceedings.
> First, if preindictment proceedings were made public, many
> prospective witnesses would be hesitant to come forward voluntarily,
> knowing that those against whom they testify would be aware of that
> testimony. Moreover, witnesses who appeared before the grand jury
> would be less likely to testify fully and frankly, as they would be open
> to retribution as well as to inducements. There also would be the risk
> that those about to be indicted would flee, or would try to influence
> individual grand jurors to vote against indictment. Finally, by
> preserving the *secrecy* of the proceedings, we assure that persons who
> are accused but exonerated by the grand jury will not be held up to
> public ridicule."

<u>Douglas Oil Co. v. Petrol Stops Northwest</u>, 441 U.S. 211, 218–219 (1979)

(emphasis added) (footnotes and citation omitted).

     As the Court in <u>Douglas</u> confirmed, it is well established that there are

compelling state interests in favor of preserving the secrecy of grand jury

proceedings.   However, grand juries are also expected to "operate within the limits

of the First Amendment, as well as other provisions of the Constitution."

<u>Butterworth v. Smith</u>, 494 U.S. 624, 631 (1990) (internal quotation and citation

omitted) (affirming that a Florida law preventing a grand jury witness from revealing his own grand jury testimony violated the First Amendment).

Plaintiff Juror in the present case seeks a declaratory judgment which holds that her free speech rights trump the State of Missouri's interests in preserving the secrecy of grand jury proceedings.   However, the free speech rights at issue in this case are very different than those in <u>Butterworth</u>.   In that case, a grand jury witness wanted to speak and write about his own testimony before the grand jury.[4]   The speech Juror wants to disseminate here is not limited to information Juror had before her grand jury service.

In her complaint, Juror seeks to be released from the oath of secrecy she took as a grand juror and to be allowed to speak freely about her grand jury experience without limitation.   Juror contends that McCulloch's public statement at the press conference about the grand jury's investigation and the subsequent release of some evidence presented to the grand jury leaves "no remaining interest in maintaining secrecy to weigh against [Juror's] First Amendment rights."   [Doc. # 33, Pl.'s Mem. in Opp'n at 16]   Juror asserts in her complaint that '[a]s applied in the circumstances of this case, any interests furthered by maintaining grand jury secrecy

---

[4] The witness had also sought to divulge his "experience" before the grand jury.   The Court declined to address this undefined request because the lower court's holding was limited to the issue of "testimony before the grand jury". <u>Butterworth</u>, 494 U.S. 629, n.2 (internal quotation omitted).

are outweighed by the interests secured by the First Amendment."   [Compl. at ¶ 58]   Juror wants to discuss the opinions of other grand jurors in the Wilson matter and to make public her own observations and impressions of the proceedings. Juror seeks an unlimited release from her oath of secrecy.   Moreover, Juror does not limit her request to the Wilson matter.   Juror also wants to compare other grand jury proceedings in which she participated to the Wilson matter.   Comparing other grand jury proceedings would require the disclosure of evidence, witness testimony, and other confidential information from those other proceedings.

Juror's desire to speak about her grand jury experience challenges the lonstanding tradition that citizens who serve on grand juries must not reveal the details of their service.   The imposition of an oath of secrecy on grand jurors is not a prohibition of speech based on content.   Grand jurors are prevented from speaking about their experience on a grand jury, not because of their point of view, but because secrecy has been deemed to be an integral and important governmental interest in preserving the integrity of the criminal justice system in this country.

*The Doctrine of Abstention*

Defendant McCulloch has moved to dismiss this lawsuit on several grounds. One ground for dismissal is based on the doctrine of abstention.[5]

---

[5]  Because abstention is "a prudential rather than a jurisdictional ground for dismissal," the pleading and burden

"As a general rule, federal courts have a virtually unflagging obligation to exercise their jurisdiction in proper cases.   This obligation notwithstanding, federal courts may abstain from deciding an issue in order to preserve traditional principles of equity, comity, and federalism."   Beavers v. Arkansas State Bd. of Dental Examiners, 151 F.3d 838, 841 (8th Cir. 1998) (internal quotes and citations omitted).

A federal court's discretion to decline to exercise its equity jurisdiction "may be applied when judicial restraint seems required by considerations of general welfare."   Burford v. Sun Oil Co., 319 U.S. 315, 333 n.29 (1943).   "It is particularly desirable to decline to exercise equity jurisdiction when the result is to permit a State court to have an opportunity to determine questions of State law which may prevent the necessity of decision on a constitutional question."  Id.

The United States Supreme Court has addressed when it might be appropriate for a federal court to abstain from exercising its jurisdiction in what has become known as the Pullman abstention doctrine.   Railroad Commission of Tex. v. Pullman Co., 312 U.S. (1941).   When deciding whether to abstain under the Pullman abstention doctrine, a court must consider:

---

requirements of Rule 12(b)(6) are not applicable, nor is the court "limited to the facts that the plaintiff pleaded to determine whether comity and federalism counsel against [the] exercise of jurisdiction." Christian Action Network v. Maine, 679 F. Supp. 2d 140, 143 n.2 (D. Me. 2010); see also Mo. ex rel. Nixon v. Prudential Health Care Plan, Inc., 259 F.3d 949, 953 (8th Cir. 2001).

(1) the effect abstention would have on the rights to be protected by considering the nature of both the right and necessary remedy;
(2) available state remedies;
(3) whether the challenged state law is unclear;
(4) whether the challenged state law is fairly susceptible to an interpretation that would avoid any federal constitutional question; and
(5) whether abstention will avoid unnecessary federal interference in state operations."

Beavers, 151 F.3d at 841 (citations omitted).   The last factor "incorporates two distinct considerations: (1) whether there is a pending state action that will be disrupted, and (2) whether federal intervention would interfere with state procedures and policies in areas of special state interest."   Id. at 841 n.8 (citation omitted).

Taking the Beavers factors in reverse order, abstention in the present case could avoid unnecessary federal interference in the State of Missouri's administration of its grand jury system.   How Missouri manages its criminal justice proceedings and how it employs and supervises its grand juries is an area of fundamental importance to a sovereign state.   Federal intervention would interfere with Missouri's procedures and policies in an area of special state interest, that is, the control, use, and structure of its grand jury system.

In addition, there is no pending state proceeding which would be disrupted by either going forward or by abstaining in this matter.

12

Finally, the challenged state law in this matter is fairly susceptible to an interpretation that would avoid any federal constitutional question.   Section 540.320 R.S.Mo. provides that: "No grand juror shall disclose any evidence given before the grand jury, nor the name of any witness who appeared before them …." Juror asserts that McCulloch's disclosures and public statement have eliminated any remaining interest in maintaining secrecy in the grand jury's proceedings.   At issue is whether McCulloch's disclosures permit Juror to talk about the same information, or would such speech be deemed to "disclose any evidence" which is prohibited under § 540.320.   Stated otherwise, have McCulloch's disclosures served to eliminate the Missouri statutory requirement for secrecy?   As a result of McCulloch's disclosures, is Juror now permitted to freely discuss any aspect of her grand jury service, or is she limited to speaking only about those matters disclosed by McCulloch?   Or, despite McCulloch's disclosures, is Juror still completely barred from discussing any aspect of her grand jury service?

*Juror's state law remedies*

Juror has state remedies available to her to address these questions.   These issues can be resolved in a declaratory action in Missouri state court regarding the continued application and validity of § 540.320 in light of McCulloch's disclosures. These issues should be presented to the grand jury's supervisory court "as it is in the

best position to determine the continuing need for grand jury secrecy." <u>Douglas Oil Co. of California</u>, 441 U.S. at 226-227 ("in general, requests for disclosure of grand jury transcripts should be directed to the court that supervised the grand jury's activities").   A ruling favorable to Juror would avoid the need to address any federal constitutional question.   <u>George v. Parratt</u>, 602 F.2d 818, 822 (8th Cir. 1979) (where a state court decision may moot a plaintiff's constitutional claim, abstention is appropriate even though it is impossible to forecast if it would actually do so).

Moreover, challenging the scope of § 540.320 is not the only legal remedy available to Juror in state court.   It is important to emphasize the obvious: this grand jury was impanelled by the Missouri Circuit Court of St. Louis County.   The oath of secrecy Juror took was administered by a St. Louis County Circuit Court judge.   That court generally, and that judge specifically, retain jurisdiction over Juror to enforce the oath, if appropriate, through contempt proceedings.   <u>Chemical Fireproofing Corp. v. Bronska</u>, 553 S.W.2d 710, 718-719 (Mo. Ct. App. 1977) ("Contempt proceedings are sui generis and are triable only by the court against whose authority the contempts are charged.   No other court may inquire into the charge.   In order that a court may compel obedience to his orders, it must have the right to inquire whether there has been any disobedience thereof.   To submit the

14

question of disobedience to another tribunal, be it a jury or another court, would operate to deprive the proceeding of half of its efficiency.") (punctuation and internal quotations omitted).

Conversely, that court generally, and that judge specifically, retain jurisdiction to release Juror from her oath to keep the grand jury proceedings secret. Juror can file a declaratory action with the St. Louis County Circuit Court seeking to be released from her oath of secrecy based on McCulloch's disclosures and the unique circumstances of this case.

### *Conclusion*

I find that Missouri courts should be given the opportunity to resolve this issue before Juror pursues a federal constitutional challenge.   Norwood v. Dickey, 409 F.3d 901, 904 (8th Cir. 2005) (in affirming dismissal based on abstention the court stated "We will not engage any presumption that the state courts will not safeguard federal constitutional rights.") (internal quotes and citation omitted). There are state court remedies available to give Juror the relief she seeks. Abstention will not impact Juror's ability to litigate her right to speak about her grand jury experience.   Moreover, in her state court proceeding Juror will have the ability to raise her First Amendment claim.

In applying the Beavers factors to the present case, I conclude that the State

15

of Missouri should be given the opportunity to address Juror's request to be

released from her oath of secrecy and that abstention is appropriate.   As a result, I

will grant McCulloch's motion to dismiss.   <u>Quackenbush v. Allstate Ins. Co.</u>, 517

U.S. 706, 721 (1996) (where the relief being sought is equitable in nature, a federal

court may "decline to exercise jurisdiction altogether by either dismissing the suit or

remanding it to state court").

      Accordingly,

      **IT IS HEREBY ORDERED that** Defendant Robert McCulloch's motion to

dismiss [#26] is **GRANTED**.

 

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 5th day of May, 2015.

16