## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| GRAND JUROR DOE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case 4:15-cv-6-RWS |
| | ) |
| ROBERT P. MCCULLOCH, in his | ) |
| official capacity as Prosecuting | ) |
| Attorney for St. Louis County, | ) |
| Missouri, | ) |
| | ) |
| Defendant. | ) |

## DEFENDANT'S REPLY MEMORANDUM IN SUPPORT
## OF HIS MOTION TO DISMISS

Defendant Robert P. McCulloch ("McCulloch"), by and through counsel, submits this reply memorandum in support of his motion to dismiss Plaintiff Doe's ("Doe") complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

## I.    Introduction

Despite having been duly sworn and twice charged to keep secret the counsel of the state, her fellows, and her own, Doe now claims it is intolerable that she should be held to her oath or made to abide by her charge.

---

[1]      As stated in Defendant's Memorandum in Support of his Motion to Dismiss, if this Court determines that a motion to dismiss is not procedurally correct, Defendant's motion should instead be treated as a motion for summary judgment. *Hamm v. Rhone-Poulenc Rorer Pharm., Inc.*, 187 F.3d 941, 948 (8th Cir. 1999) (allowing district court to convert motion to dismiss into a motion for summary judgment when it relies on materials outside of the pleadings).

As demonstrated below, Doe's claim is precluded; the Court is without jurisdiction; and, in any event, Doe has no right under the First Amendment to violate her oath or to disregard Missouri law. The Court should, therefore, dismiss Doe's claims.

## II.  Argument

### A.  The Full Faith and Credit Clause applies and is dispositive.

Doe points out that McCulloch previously argued against reopening this case based upon the Full Faith and Credit Clause. Doc. 87, p. 2. In his memorandum in opposition to Doe's motion to reopen, McCulloch relied, in part, on *San Remo Hotel, L.P. v. City and Cnty. of San Francisco*, 545 U.S. 323 (2005) for its analysis of the Full Faith and Credit Clause. Doc. 68, pp. 4–7. Doe argues that this Court reopened the case notwithstanding McCulloch's Full Faith and Credit Clause argument because "nothing in the record before [the Court] indicates that [Doe] broadened the scope of her state law claims to include the First Amendment claim she reserves in this Court." Doc. 87, p. 2. Indeed, this Court noted that the *San Remo* decision "turned" on that precise issue. Doc. 74, Order, p. 4. Doe argues that, for those reasons, the Full Faith and Credit Clause does not apply now to McCulloch's motion to dismiss. Doc. 87, pp. 2–3.

Doe's argument is without merit. McCulloch has attached hereto Exhibits A (Doe's state-court petition) and B (Opinion of the Missouri Court of Appeals).[2]

---

[2]    "The district court may take judicial notice of public records," *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003), and the district court can consider

In the first paragraph of her state-court petition, Doe declared that, by way of her state-court action, she "seeks declaratory judgment that Missouri laws criminalizing speech by Doe, about Doe's experiences as a state grand juror… do not apply to Doe as properly construed or **are unconstitutional** as applied." Ex. A, p. 1. The <u>only</u> constitutional right mentioned in Doe's state-court petition is that of the First Amendment. *Id*. at p. 2. Indeed, she specifically incorporates <u>all</u> of her allegations regarding the First Amendment into her state-court declaratory judgment claim. *Id*. at p. 12, ¶¶ 60, 62.

Because Doe made these allegations in her state-court petition, the Missouri Court of Appeals addressed the precise issue now considered by this Court:

> **[W]e find Doe injected the freedom of speech issue into the petition. In her petition, Doe argued that the grand jury secrecy statutes were unconstitutional as applied to her, and the only constitutional right she refers to is freedom of speech. Thus, the trial court could only address that argument by considering how the grand jury secrecy statutes potentially affected Doe's freedom of speech.**

Ex. B, p. 8; *Doe v. McCulloch*, 542 S.W.3d 354, 360 (Mo. App. E.D. 2017).

In other words, Doe specifically asked the state court to issue a judgment declaring that the grand jury secrecy statutes violate her First Amendment rights. *Id*. So, even if Doe properly reserved her First Amendment claim for

---

public records in deciding a motion to dismiss. *C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 764 (8th Cir. 2012). In Missouri, court records are public records. *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007).

litigation in federal court, she nevertheless expanded the scope of her state-law declaratory judgment claim to include analysis of her First Amendment rights.

The record before this Court, therefore, *does* indicate that Doe "broadened the scope of her state law claims to include the First Amendment claim," and, indeed, the Missouri Court of Appeals recognized precisely that. Therefore, under this Court's reasoning in its Order to reopen the case, the Full Faith and Credit Clause should apply just as it did in *San Remo*, regardless of Doe's *England* reservation.

Doe then relies on dicta from the Eighth Circuit's decision in *Kottschade v. City of Rochester*, 319 F.3d 1038 (8th Cir. 2003) in a further attempt to support her position that "the doctrines of former adjudication" should not apply when an *England* reservation has been made. Doc. 87, p. 3. This reliance is misplaced for at least two reasons. First, Doe ignores the fact that the Court in *Kottschade* ruled that the plaintiff's claim was dismissed as "unripe" and it emphasized that it was "deferring a decision" on the issue of whether *res judicata* or collateral estoppel arguments might be appropriate. *Kottschade*, 319 F.3d at 1042. And second, in 2005, two years *after* the *Kottschade* decision, the U.S. Supreme Court in *San Remo* took up the very issue that had been deferred by the Eight Circuit. The Supreme Court held in *San Remo* that "[a]lthough petitioners were certainly entitled to reserve some of their federal claims… *England* does not support their erroneous expectation that their reservation would fully negate the preclusive effect of the state-court judgment." *San Remo*, 545 U.S. at 338. The

*San Remo* decision specifically put to bed the very issue that was left open by *Kottschade.*

Doe then points to a decades-old decision from the Third Circuit, which said that "the traditional rules of res judicata and collateral estoppel as applied by section 1738 do not apply to state proceedings that follow *Pullman* abstention and an *England* reservation." Doc. 87, p. 3 (citing *Instructional Sys. v. Computer Curriculum Corp.*, 35 F.3d 813, 821 (3rd Cir. 1994)). As a preliminary matter, and as stated above, the *San Remo* decision was issued by the U.S. Supreme Court much later and it provided that the preclusion doctrines *do* apply in such cases.

Moreover, even if *Instructional Sys.* had not been abrogated by *San Remo*, Doe's argument is unavailing because she has again failed to provide this Court with the complete picture. The court in *Instructional Sys.* went further than the cherry-picked quote offered by Doe, and explained that, even though it did not believe the "traditional" rules of *res judicata* and collateral estoppel apply, a "modified application of the preclusion doctrine" is appropriate. 35 F.3d at 823. The court concluded that it was "bound to accept" the state court's answer to a state-law claim "as well as the factual and legal findings necessary to that answer." *Id*. The key to this "modified application of the preclusion doctrine" is, therefore, whether the state-court's decision "necessarily" required it to consider a federal issue. *Id*. If so, its ruling on the federal issue is subject to the preclusion doctrines. *Id*.

That is precisely the point made by *McCulloch* here—the state court *necessarily* decided the First Amendment issue. Since the state court necessarily decided that the grand jury statutes did not violate Doe's First Amendment rights, this Court is bound by that legal finding, even under the case law relied upon by *Doe*.

Since the Full Faith and Credit Clause applies, Doe's claim should be dismissed.

## B. The Court lacks subject matter jurisdiction over Doe's claims.

### 1. Doe is without standing.

Where "a plaintiff lacks standing, the district court has no subject matter jurisdiction." *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 801 (8th Cir. 2002). In order to establish standing, Doe must show, among other things, that her injuries would be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). An injury is redressable if it "fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976).

In this case, Doe claims to fear prosecution by McCulloch under various statutes, including sections 540.320, 540.310, 540.080, and 540.120, RSMo. Doc. 1, ¶ 41. However, of the four statutes cited by Doe, only section 540.320 carries a criminal penalty enforceable against grand jurors. Mo. Rev. Stat. § 540.320.

Accordingly, unless Doe plans to violate section 540.320, she cannot show that an injunction entered against McCulloch would do anything to redress her purported injuries or allay her fears. *Simon*, 426 U.S. at 41–42; *see also Wieland v. U.S. Dep't of Health & Hum. Serv.*, 793 F.3d 949, 954 (8th Cir. 2015).

Doe did not allege in her complaint that she wanted to disclose any evidence or witnesses that have not already been made public. However, in her opposition to McCulloch's motion to dismiss, Doe took the remarkable position that she should be allowed to disclose whatever information she wants, whenever she wants, regardless of the settled expectations of witnesses and other participants in the grand jury proceedings, the effect such disclosure may have on future grand juries, or the danger such disclosure might pose to the witnesses or other persons whose identities thus far have remained a secret.

Given that Doe has not alleged in her complaint that she intends to disclose evidence or witnesses that have not already been made public, it is not plausible based on her complaint that Doe is truly at risk of being prosecuted for making such disclosures. *Cf. Zanders v. Swanson*, 573 F.3d 591, 593–94 (8th Cir. 2009) (a plaintiff "must face a credible threat of present or future prosecution under the statute for a claimed chilling effect to confer standing to challenge the constitutionality of a statute that both provides for criminal penalties and abridges First Amendment rights"). However, assuming for the sake of argument that Doe wishes to proceed as recklessly as she suggests, the First Amendment would not shield her from criminal prosecution under section

540.320. Indeed, as argued by McCulloch in his initial memorandum and in Section II.C below, grand jury secrecy is intended to encourage freedom of disclosure by witnesses and others, and an order permitting Doe to disregard the restrictions placed on her by section 540.320 would undermine the integrity of Missouri's grand jury system and place witnesses and others in jeopardy.

Although Doe requests that the Court enjoin McCulloch from prosecuting her under section 540.320, most of the information Doe wishes to divulge is protected from disclosure by sections 540.080 ("Oath of grand jurors") and 540.310 ("Cannot be compelled to disclose vote"). Mo. Rev. Stat. §§ 540.320, 540.310, & 540.080. However, given that neither section 540.080 nor section 540.310 carries a criminal penalty provision, Doe cannot show that an injunction entered against McCulloch would redress her purported injuries. *Simon*, 426 U.S. at 41–42; Mo. Rev. Stat. §§ 540.080 & 540.310.

In her opposition to McCulloch's motion to dismiss, Doe concedes that sections 540.080 and 540.310 do not carry criminal penalties. Nevertheless, she argues that "[r]ules governing grand jury proceedings have long been enforced through criminal contempt actions," and that "McCulloch, as the prosecuting attorney for St. Louis County, is responsible for commencing and prosecuting any contempt proceedings." Doc. 87, pp. 7–8.

Although McCulloch has broad authority as the elected prosecutor for St. Louis County to initiate criminal proceedings on behalf of the County or the

State, *see* Mo. Rev. Stat. § 56.060, Doe has cited no authority to support her contention that McCulloch could unilaterally prosecute Doe for contempt.

Criminal contempt is a power given to the courts, not prosecutors, and "is not, strictly speaking, a criminal proceeding." *Ramsey v. Grayland*, 567 S.W.2d 682, 686 (Mo. App. 1978); *State ex rel. Chassaing v. Mummert*, 887 S.W.2d 573, 579 (Mo. banc 1994) (same); *see also Smith v. Pace*, 313 S.W.3d 124, 129–30 (Mo. banc 2010) ("Missouri courts have both an inherent power under the constitution to punish for contempt as well as authority to try contempt-of-court cases under the statutory crime of contempt"); *Osborne v. Purdome*, 244 S.W.2d 1005, 1012 (Mo. banc 1951) (courts have inherent power to hold persons in contempt); Mo. Rev. Stat. § 476.110 (granting "[e]very court of record" the power to punish criminal contempt). Indeed, and as the cases relied upon by Doe demonstrate, persons challenging a judgment must seek a writ against the issuing judge rather than against the prosecutor. *Smith*, 313 S.W.3d at 136 (reversing finding of contempt against attorney by "complainant" judge); *Ramsey*, 567 S.W.2d at 691 (sufficient evidence to support trial judge's finding of contempt); *Ex parte Creasy*, 148 S.W. 914, 921 (Mo. banc 1912) (reversing trial judge's finding of contempt against grand jury witness); *Ex parte Shull*, 121 S.W. 10, 12 (Mo. 1909) (reversing trial judge's finding of contempt against witness alleged to have been disrespectful).

In this case, Doe makes much of the fact that McCulloch handed the grand jurors copies of Missouri's secrecy laws before they were discharged, and thus,

argues McCulloch's action shows he "embraced rather than rejected the statutes." Doc. 87, p. 7; Doc. 1, ¶ 28. However, whether McCulloch has "embraced" or "rejected" the laws governing grand jury secrecy is not relevant to whether an injunction against him would redress Doe's purported injuries. Indeed, the St. Louis County Circuit Court has a clear prerogative to enforce its own orders regardless of McCulloch's participation or consent, and McCulloch has no independent authority under the law to prosecute Doe for contempt absent the approval and active participation of the court. In other words, even if McCulloch is enjoined, if Doe violates the grand jury secrecy laws and the circuit court wants to punish her for contempt, it will do so. An injunction against McCulloch will do nothing to stop this. Accordingly, Doe cannot possibly establish that her purported injuries can fairly be traced to McCulloch or that an injunction against McCulloch would redress her injuries. *Simon*, 426 U.S. at 41–42.

### 2.    McCulloch has Eleventh Amendment immunity.

McCulloch is entitled to Eleventh Amendment immunity on Doe's claims in this case because, as argued above, McCulloch has no independent authority to prosecute Doe for contempt absent the approval and active participation of the St. Louis County Circuit Court where Doe was charged. *See, e.g., Ex Parte Young*, 209 U.S. 123, 157 (1908) (defendant official must have "some connection with the enforcement of the act" to be enjoined); *see also 281 Care Comm. v. Arneson*, 766 F.3d 774, 797 (8th Cir. 2014).

In her opposition to McCulloch's motion to dismiss, Doe argues that McCulloch is not entitled to immunity under the Eleventh Amendment because he is neither a state nor a state official. Doc. 87, p. 13. However, Doe's argument lacks merit.

In deciding whether a particular instrumentality of the state may invoke immunity under the Eleventh Amendment, the court must "inquire[] into the relationship between the State and the entity in question." *Regents of the Univ. of Calif. v. Doe*, 519 U.S. 425, 429 (1997). In making this inquiry, courts may examine the essential nature of the proceeding at issue or the nature of the entity created by state law. *Id.* at 429–30.

In this case, Doe is requesting that the Court enjoin McCulloch from acting in his official capacity as the elected prosecutor for St. Louis County to prosecute Doe under Missouri law. Doc. 1, ¶ 8. McCulloch has broad powers to prosecute persons in St. Louis County under state law, *see* Mo. Rev. Stat. § 56.060, and the prosecution Doe seeks to enjoin would implicate McCulloch's powers and duties as a quasi-judicial officer representing the people of Missouri. *State ex rel Jackson Cnty. Prosecuting Attorney v. Prokes*, 363 S.W.3d 71, 85 (Mo. App. W.D. 2011) ("a prosecuting attorney in a criminal case acts as a quasi-judicial officer representing the people of the State."); *see also State v. Todd*, 433 S.W.2d 550, 554 (Mo. 1968) (authority of county prosecutors in Missouri is carved out of Missouri Attorney General's overriding authority as state's chief legal officer). Accordingly, McCulloch may invoke immunity under the Eleventh

Amendment. *Regents of the Univ. of Calif.*, 519 U.S. at 429; *see also McMillan v. Monroe Cnty.*, 520 U.S. 781, 786–87 (1997); *Bibbs v. Newman*, 997 F. Supp. 1174, 1177–81 (S.D. Ind. 1998) (state prosecutor was state official for Eleventh Amendment purposes).

### 3.   Doe's claims are not ripe.

To the extent Doe has standing to assert claims against McCulloch under section 540.320, such claims are not ripe. Mo. Rev. Stat. § 540.320. Contrary to what Doe now alleges in her opposition to McCulloch's motion to dismiss, it is unclear from her complaint whether she truly intends to divulge witnesses and evidence that have been redacted or otherwise withheld by McCulloch. It would be premature for the Court to enjoin a prosecution that may never occur. *See, e.g., Mo. Roundtable for Life v. Carnahan*, 676 F.3d 665, 674 (8th Cir. 2012) (ripeness depends on "whether the case involves contingent future events that may not occur as anticipated, or indeed may not occur at all").

## C.   Doe has not stated a claim upon which relief may be granted.

In her opposition to McCulloch's motion to dismiss, Doe complains that the information released by McCulloch thus far provides only "an appearance of transparency" but does not "fully portray the proceedings before the grand jury." Doc. 87, p. 9; *see also* Doc. 1, ¶ 33. Doe further complains that McCulloch's public statements have mischaracterized Doe's views, and she seeks an injunction giving her full freedom to discuss her experience and opinions as a grand juror,

including her impression that the presentation of evidence was handled differently by the state in the Wilson investigation than in the hundreds of other matters considered by Doe's grand jury. Doc. 1, ¶¶ 19–20. Doe claims that "[t]he restriction here is a content-based restriction on speech" warranting a strict scrutiny analysis—*i.e.*, the statutes must be "narrowly tailored to a compelling state interest." Doc. 87, p. 17. Doe argues that Missouri has "no remaining interest in maintaining secrecy to weigh against Doe's First Amendment rights" in this case. *Id*. at 18; *see also* Doc. 1, ¶ 58.

Doe's arguments lack merit. As an initial matter, this Court has already held that "[t]he imposition of an oath of secrecy on grand jurors is <u>not</u> a prohibition of speech based on content." Doc. 44, Order, p. 10 (emphasis added).

In any event, regardless of the level of scrutiny applied, Missouri clearly *does* have a compelling interest in maintaining grand juror secrecy in this case, and Doe's claim to the contrary is baseless. Indeed, this Court previously held that this case involves an "important Missouri state issue," and "the issue of whether the State of Missouri can require a duly sworn grand juror to preserve the secrecy of grand jury proceedings concerns a fundamental element of how Missouri chooses to maintain, as a sovereign state, the integrity of its criminal court proceedings…" Doc. 44, Order, pp. 1–2; Doc. 52, Order, p. 3.

In fact, one of the reasons this Court abstained in the first place was because, as the Court explained, abstention is proper where "the State's interests are paramount." Doc. 52, Order, p. 2. For instance, one such interest

recognized by the Court is the "State's interests in maintaining uniformity in the treatment of an essentially local problem, and retaining local control over difficult questions of state law bearing on policy problems of substantial public import." *Id*. at 2–3. The Court noted that "[t]he United Sates Supreme Court has also recognized that the secrecy of grand jury proceedings serves as an important governmental interest." Doc. 44, p. 8 (*citing Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 218–19 (1979)).

This Court recognized that "conducting grand jury proceedings in secret is a longstanding and important tradition in the American criminal justice system" and that the right to free speech "is not unlimited and unqualified." Doc. 44, Order, p. 6. The Court emphasized this long history of grand jury secrecy. *Id*. at 6–8 (*citing U.S. v. Sells Eng'g, Inc.*, 463 U.S. 418, 422–25 (1983)). The Court further explained that "[t]he societal value of speech must, on occasion, be subordinated to other values and considerations." *Id*. at 7–8 (*citing Dennis v. U.S.*, 341 U.S. 494, 503–04 (1951)). This rings true in the present case because, as this Court held, "**it is well established that there are compelling state interests in favor of preserving the secrecy of grand jury proceedings**." *Id*. at 8 (emphasis added). The Court summed this up succinctly when it said "[g]rand jurors are prevented from speaking about their experience on a grand jury… because secrecy has been deemed to be an integral and important governmental interest in preserving the integrity of the criminal justice system in this country." *Id*. at 10.

Thus, this Court has already recognized at length the state's compelling interests in this matter. Doe's claim that the state has no interest in maintain grand juror secrecy in this case has been directly refuted by this Court. Any argument to the contrary is baseless.

This Court's reasoning comports with the U.S. Supreme Court's consistent recognition that the proper functioning of the grand jury system depends upon the secrecy of grand jury proceedings. *Douglas Oil*, 441 U.S. at 218–19 (*citing U.S. v. Proctor & Gamble Co.*, 356 U.S. 677 (1958)). The grand jury system is deeply rooted in the federal and state courts in the United States, *see Brandzburg v. Hayes*, 408 U.S. 665, 686–87 (1972), and "[i]n the absence of a clear indication in a statute or Rule, [a court] must always be reluctant to conclude that a breach of [grand jury] secrecy has been authorized." *Sells Eng'g, Inc.*, 463 U.S. at 425 (*citing Ill. v. Abbott & Assoc., Inc.*, 460 U.S. 557, 572 (1983)); *see also Mannon v. Frick*, 295 S.W.2d 158, 162 (Mo. 1956); *State ex rel Clagett v. James*, 327 S.W.2d 278, 284 (Mo. banc 1959); *Palmentere v. Campbell*, 205 F. Supp. 261, 264 (W.D. Mo. 1962). Although the government's interest in secrecy is said to diminish once a grand jury has completed its work, "in considering the effects of disclosure on grand jury proceedings, the courts must consider not only the immediate effects upon a particular grand jury, but also the possible effect upon the functioning of future grand juries." *Douglas Oil*, 441 U.S. at 222.

Doe's term as a grand juror began in May 2014 and ended in November 2014. Doc. 1, ¶¶ 10–11, 26. During that time, she and her fellow grand jurors considered hundreds of cases presented by McCulloch's office. Although McCulloch has publicly released redacted copies of all the testimony and nearly all the evidence presented to the grand jury in connection with the Wilson investigation, *see* Exhibit C to Doe's complaint, he has not released any information from any of the hundreds of other cases considered by Doe's grand jury.

This Court has previously expressed concern with Doe's desire "to discuss the opinions of other grand jurors in the Wilson matter and to make public her own observations and impressions of the proceedings" as well as her desire to "compare other grand jury proceedings in which she participated to the Wilson matter." Doc. 44, Order, p. 10. The Court observed that "[c]omparing other grand jury proceedings would require the disclosure of evidence, witness testimony, and other confidential information from those other proceedings." *Id*.

Doe has provided no support for her contention that she should be permitted to disclose information relating to any of the hundreds of cases her grand jury considered prior to the Wilson investigation. Nor has she provided a valid basis for disclosing witnesses or evidence from the Wilson investigation that McCulloch has withheld. McCulloch withheld the names of witnesses and others in order to protect them from harm. *See* Doc. 1-4; *see also* Mo. Rev. Stat. § 610.100.3. However, such redactions are also justified by the need to protect the

settled expectations of witnesses and others that appeared before Doe's grand jury, and to encourage the participation of witnesses in future grand juries. *Douglas Oil*, 441 U.S. at 222; *see also Rehberg v. Paulk*, 132 S.Ct. 1497, 1509 (2012) (disclosure of preindictment grand jury proceedings would chill participation by witnesses); *Brandzburg*, 408 U.S. at 700 (characteristic secrecy of grand jury proceedings protects interests of those compelled to participate in grand jury process); *CBS Inc. v. Campbell*, 645 S.W.2d 30, 33 (Mo. App. E.D. 1983) ("The secrecy of the grand jury proceeding . . . ameliorates the harmful effects of disclosure that would result in an ordinary civil or criminal trial.").[3]

Doe complains that McCulloch has mischaracterized Doe's view of the evidence, *see* Doc. 87, p. 18, but such allegations are baseless. McCulloch does not know Doe's identity or how she voted, and McCulloch has never purported to speak for any grand juror individually. Although Doe may now regret having sworn her oath and accepted her charge, she has no right to publicly report her impressions, and it has long been established that a prosecutor, unlike a grand juror, is competent to discuss the evidence presented to a grand jury. *See, e.g., State v. Grady*, 84 Mo. 220, 224 (1884); *see also In the Matter of Interim Report of*

---

[3]    On March 4, 2015, the United States Department of Justice ("DOJ") issued an 86-page report summarizing the evidence against Wilson. The DOJ report, a copy of which is publically available online at http://www.justice.gov/usao/pam/Documents/DOJ%20Report%20on%20Shooting%20of%20Michael%20Brown.pdf, found that Wilson's use of deadly force was not "objectively unreasonable," and concluded it was not appropriate to present the matter to a federal grand jury for indictment. *Id*. at 5. With the exception of Darren Wilson and Michael Brown, the DOJ redacted the names of all individuals to "safeguard against an invasion of their personal privacy." *Id*. at 6 n.2

*the Grand Jury*, 553 S.W.2d 479, 482 (Mo. banc 1977); *In the Matter of the Report of the Grand Jury*, 612 S.W.2d 864, 865–66 (Mo. App. E.D. 1981); *In the Matter of Regular Report of Grand Jury*, 585 S.W.2d 76, 77 (Mo. App. E.D. 1979).

Moreover, and notwithstanding Doe's cavils that the information released by McCulloch has not "fully portrayed" the grand jury proceedings, Doe has provided no support for her suggestion that the release of some grand jury information necessarily requires the release of everything. Indeed, complete transparency is anathema to the very nature of a grand jury, which depends upon secrecy and anonymity for its proper functioning. *See Douglas Oil*, 441 U.S. at 222; *Rehberg*, 132 S.Ct. at 1509; *Sells Eng'g, Inc.*, 463 U.S. at 425; *Mannon*, 295 S.W.2d at 162; *Palmentere*, 205 F. Supp. at 264.

Nor does Doe offer any support for her position that she should be allowed to disclose the counsel of the state, her fellows, or her own, the identities of her fellow grand jurors, or the content and nature of the grand jury's votes and deliberations. Mo. Rev. Stat. §§ 540.080 & 540.310. Such information is absolutely prohibited from disclosure in Missouri, *Mannon*, 295 S.W.2d at 162, and the *Butterworth* decision relied upon by Doe provides no authority to suggest that a grand juror has a right to share her "experiences" or opinions as such. *Butterworth v. Smith*, 494 U.S. 624, 629 n.2, 631–32 (1990) (witness may "divulge information of which he was in possession before he testified before the grand jury, and not information which he may have obtained as a result of his participation in the proceedings of the grand jury"); *see also Rhinehart*, 467 U.S.

18

at 32 ("A litigant has no First Amendment right of access to information made available only for the purposes of trying his suit." (*citing Zemel v. Rusk*, 381 U.S. 1, 16–17 (1965)). Indeed, it is well established that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another," *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973), and although the law disfavors the ad hoc creation of new categories of prohibited speech, the Supreme Court has recognized that speech may be proscribed in order to protect the integrity of important governmental processes. *See U.S. v. Alvarez*, 132 S.Ct. 2537, 2546 (2012).

In fact, this Court addressed Doe's reliance on the *Butterworth* case in its prior Order, holding:

> [T]he free speech rights at issue in this case are very different than those in <u>Butterworth</u>. In that case, a grand jury witness wanted to speak and write about his own testimony before the grand jury. The speech [Doe] wants to disseminate here is not limited to information [she] had before her grand jury service.

Doc. 44, Order, p. 9.

Doe's continued reliance on the *Butterworth* case in her memorandum in opposition to McCulloch's motion to dismiss is clearly misplaced based upon this Court's prior analysis of *Butterworth*. *Id.*

Given the long line of federal and Missouri cases recognizing the central importance of secrecy to the proper functioning of grand juries, there is no question that Missouri's interest in secrecy outweighs whatever personal interest Doe may have in sharing her experience and opinions. *See, e.g., Douglas*

*Oil*, 441 U.S. at 222; *Rehberg*, 132 S.Ct. at 1509; *Sells Eng'g, Inc.*, 463 U.S. at 425; *Mannon*, 295 S.W.2d at 162; *State ex rel Clagett*, 327 S.W.2d at 284; *Palmentere*, 205 F. Supp. at 264; *see also Butterworth*, 494 U.S. at 636–37 (loosening grand jury secrecy risks may "subject[] grand jurors to a degree of press attention and public prominence that might in the long run deter citizens from fearless performance of their grand jury service" (Scalia, J., concurring)). Accordingly, the Court should dismiss Doe's complaint for failure to state a claim.

## III.   Conclusion

WHEREFORE, for all of the foregoing reasons, Doe's claim should be dismissed as a matter of law.

Respectfully submitted,

**JOSHUA D. HAWLEY**,
Attorney General

/s/ *Andrew D. Kinghorn*
Andrew D. Kinghorn, #66006MO
Assistant Attorney General
Post Office Box 861
St. Louis, MO 63188
Phone: 314-340-7861
Fax:  314-340-7029
Andrew.Kinghorn@ago.mo.gov

Peter J. Krane
St. Louis County Counselor's Office
Missouri Bar No. 32546
41 South Central Avenue
Clayton, MO  63015
Phone: (314) 615-7042
PKrane@stlouisco.com

*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 18th day of October, 2018, the foregoing was filed electronically with the Court to be served upon all parties by operation of the Court's electronic filing system.

/s/ *Andrew D. Kinghorn*
Andrew D. Kinghorn
Assistant Attorney General